### Parlin & Orendorff Company v. Bert Scott.

1. Conduct of counsel—*when ground for reversal.* Conduct of counsel in seeking to render ineffective the remarks of opposing counsel by making him appear ludicrous, is improper and ground for reversal.

2. Conduct of counsel—*when ground for reversal.* Conduct of counsel consisting in an effort to place before the jury matter which has been ruled incompetent by the court, is improper and ground for reversal.

3. Arguments of counsel—*when ground for reversal.* An argument of counsel calculated to arouse the passions and prejudices of a jury by presenting to them considerations extraneous to the evidence, is ground for reversal.

Action in case for personal injuries. Appeal from the City Court of Canton; the Hon. P. W. Gallagher, Judge, presiding. Heard in this court at the May term, 1907. Reversed and remanded. Opinion filed December 7, 1907.

Page & Wead, for appellant.

Chiperfield & Chiperfield, for appellee.

Mr. Justice Ramsay delivered the opinion of the court.

Appellee brought suit in the City Court of Canton against appellant to recover damages for injuries sustained by him through the alleged negligence of appellant. There was a verdict in favor of appellee in the sum of $4,000 upon which the court entered judgment. The case is here upon appeal.

The negligence charged and upon which a recovery was sought was alleged to consist in not affording appellee a safe place in which to do his work as an oiler of machinery in appellant's service; that in the discharge of his duties appellee was compelled to use a ladder in order to oil a swiftly revolving shaft about fourteen feet above the floor; that the ladder had no proper support at the top to stay it and had to rest upon a floor so smooth that the ladder was likely to slip; that appellee had notified appellant's agent in charge of the unsafe condition of such appliance, who promised to remedy the defect, yet failed to do so; that appellee relying upon such promises continued in such service and while so continuing was injured and sustained damages for which he brought suit.

Appellant has assigned several errors upon which a reversal is sought, but as the judgment must be reversed because of the manner in which the case was tried, we review no assignment of error except the one which relates to improper conduct of appellee's attorney upon the trial.

The rule is well established in our state that in doubtful cases, or those close upon the facts, improper conduct upon the part of counsel for the successful party, which is prejudicial in its character to the defeated party, may afford sufficient ground for reversing a judgment. In Maywood Co. v. Village of Maywood, 140 Ill. 216, the court say that it would not hesitate in a doubtful case to reverse for that reason alone, even if the trial court by its instructions told the jury to disregard the improper remarks of the attorney. This doctrine, in substance, has been repeatedly announced in our state. E., J. & E. R. R. Co. v. Fletcher, 128 Ill. 620; Robison v. Bailey, 113 Ill. App. 123; Pioneer Reserve Assn. v. Jones, 111 Ill. App. 156; Supreme Lodge Mystic Workers v. Jones, 113 Ill. App. 242, 245.

In Ill. Cent. R. R. Co. v. Seitz, 111 Ill. App. 242, this court, in an opinion by Justice Brown, said:

"There is enough natural and inherent prejudice in the minds of jurors against railroads and other corporations without having it augmented by direct and improper appeals calculated to arouse the sympathy, passion or prejudice of jurors. A lawyer who tries his case in a proper manner, observing the ethics of the profession, is at a great disadvantage when trying a cause against counsel who resort to improper language to obtain a verdict. Verdicts thus obtained generally are and always should be short lived. Trial courts should set them aside as often as they are obtained."

In the case at bar, while the jury were being examined, appellee's counsel said in the presence of the jury: "These gentlemen (speaking of appellant's attorneys) have brought an efficient and capable stenographer from Peoria to report this case. We believe in home industry." The following then ensued:

"Mr. Page: I object to that remark of counsel as improper in the presence of the jury that is to be selected.

Mr. Chiperfield: Again we hear it.

Mr. Page: I object to the remark of counsel as improper.

Mr. Chiperfield: That is another.

Mr. Page: I object to that remark of counsel.

Mr. Chiperfield: Once more we have it. You are again starting in as a bluffer this time.

Mr. Page: I object to the remarks of counsel while the jury are present.

The Court: I do not see any necessity for this, gentlemen.

Mr. Chiperfield: You can have all you want, Mr. Page, in any way you want it.

Mr. Page: I object to that remark of counsel in the presence of the jury.

Mr. Chiperfield: Again we hear it.

Mr. Page: I object to the remark.

Mr. Chiperfield: It rolls out like water from a barrel.

Parlin & Orendorff Co. v. Scott.

Mr. Page: I object to the remark of counsel before the jury.

Mr. Chiperfield: You are not going to bluff anybody in this case.

Mr. Page: I object to the remark of counsel before the jury.

Mr. Chiperfield: You may come from Peoria—

The Court: Go on with the case. Put all that occurs on both sides into the record.''

In the opening statement made by appellee's attorney to the jury the following took place:

''Bert Scott will not be able to walk to a spittoon and spit but what you will hear 'objection, objection, objection.'

The defendant objects to remarks as incompetent and improper.

Mr. Chiperfield: I told you it would come. (Laughter in court room).

The Court: Mr. Sheriff, maintain order in the court room.

Mr. Chiperfield: They have to laugh on account of the antics of the gentlemen. You will observe that I cannot open my mouth to the jury nor will this plaintiff be able to tell his story in a legitimate manner keeping inside the rules of law and evidence but what 'I object, I object' will be roared out.

Mr. Page: I again object to the remarks of counsel before the jury and I ask the court to please rule on my objections.

Mr. Chiperfield: You will hear this all the time.

Mr. Page: I except to these remarks.

The Court: Go on, Mr. Chiperfield, and confine yourself to a fair statement of what you expect to prove.''

Upon the examination of a witness, during the progress of the trial, the following took place:

''Q. What, if anything, was there upon the bottom of this ladder?

Objected to as leading and assuming there was something.

Mr. Chiperfield: There is five of the 500 objections.

Mr. Page: I object to the remark of counsel before the jury as improper.

Mr. Chiperfield: Six.

The Court: Go on.

Defendants at the time excepted.''

At another time the following took place:

''Mr. Page: I object to that statement of counsel as improper before the jury.

Mr. Chiperfield: It is rolling out of him again.

Mr. Page: I object to that remark.

Mr. Chiperfield: It fairly oozes from him.

Mr. Page: I object to that remark before the jury.

Mr. Chiperfield: Don't explode.''

Also the following:

''Mr. Chiperfield: I object to counsel using this bullying tone to the witness as improper, bellowing at the witness and standing over him.

Mr. Page: I insist, your honor, I am not using any bullying tone to the witness.

The Court: No, there is no objection to your language.''

Also the following:

''Mr. Chiperfield: I object to counsel standing over the witness and using such vociferous tone of voice and thundering in the face of the witness; I object to it as improper on the part of counsel.

The Court: You have it in the record.

Mr. Page: I would like for the court to say in the record whether or not I am standing over and gesticulating in the face of the witness or not.

The Court: I see no objection to your manner.''

At another time the following:

''Mr. Chiperfield: I object to the manner of counsel towards this witness; he is a witness in the case and for counsel to use the manner he does and the tone of voice toward him is improper and I object to it.

The Court: Go on.

Mr. Chiperfield: This is going into the record and I intend to keep it going into the record.

Mr. Page: I want the court to say whether there is anything improper in my conduct, or whether my voice is loud or I am boisterous.

The Court: There is nothing improper in your conduct, but you have asked the same question two or three times. I have not seen anything wrong in your conduct.

Mr. Chiperfield: Is it right for him to bellow at this witness?

The Court: Has he said anything as loud as you just said that?''

During the cross-examination of J. T. Hunter, a witness for appellant, the following took place:

"Q. Were you representing any insurance company when you called on Bert Scott?

Objected to as immaterial, incompetent and improper. Sustained.

Mr. Chiperfield: I want to show by this witness that he was employed for the purpose of coming down here by an insurance company; that his bill for coming down here was paid through Page & Wead by an insurance company and that he was representing an insurance company at that time. I want to show these facts and I aver that I will prove them.

Mr. Page: I object to the statement as incompetent, improper and immaterial. Sustained.

Mr. Page: I further object to the statement of counsel before the jury, he knowing it to be improper.

The Court: I sustained the objection to the question. Go on.''

During the examination of E. P. Baumgartner, witness for appellant, the following took place:

"Witness: I had more than one conversation with him. At different times he said different things. I want to tell the truth.

Mr. Chiperfield: We don't expect you to.''

During the argument of the case, upon objection

made by appellee to statements of appellant's attorney, the following took place:

"The Court: I will not rule on it—go on.

Mr. Chiperfield: The Court can shirk its duty if it wants to—

The Court: The Court will not shirk its duty. Go on.

Mr. Chiperfield: If the Court does we can find a court that will do its duty.

The Court: Go on, gentlemen, go on."

During the closing address of appellee's attorney the following took place upon an objection made by appellant:

"Mr. Page: I object to those remarks as incompetent, immaterial and improper.

Mr. Chiperfield: Yes, it is competent for a person to throw reflections upon the witness, Palmer, when he and his kind live in a city which more than any other city in this broad State is steeped in vice and iniquity and produces the poison that destroys the mind. Take all the exceptions you want to. I, myself, would be ashamed of the fact that I came from the city of Peoria, Illinois, considering the references recently made in the newspapers to prominent attorneys in that city, and I would get all the liberties I could out of the fact I came from Peoria, Illinois, half of whose citizens are in the penitentiary and the other half headed that way."

In the case at bar, at the very out-set appellee's attorney sought to make appellant's position ludicrous and ineffective in its endeavor to object to what its counsel might regard improper or irrelevant matter. We know of no right which litigants have that courts guard more zealously than the right to make objections and have a respectful hearing thereon. If such right to object is, by any means either lost or impaired, or those who care to offer objections deterred from making them, then one of the most valuable rights belonging to the legal profession is lost.

We also regard the conduct of appellee's attorney as improper in offering to prove in the presence of the jury the cross-examination of J. T. Hunter that the witness was employed for the purpose of coming to the trial by an insurance company, that his bill for coming was paid through Page & Wead by an insurance company and that he was representing an insurance company at that time, after the court had already sustained an objection to the question: "Were you representing any insurance company when you called upon Bert Scott?"

In Emery Dry Goods Co. v. DeHart, 130 Ill. App. 244, this court held, after a careful review of the cases upon that subject, that it was reversible error for counsel to advise the jury that an insurance company was interested in the defense of a suit and we there said: "The importance and necessity that counsel should, so far as possible, be restrained from attempting, directly or indirectly, by insinuations, intimidation, or otherwise, to bring to the knowledge of the jury, matters entirely foreign to the issues involved with intent to improperly influence them, far outweighs the interests of individual ligitants. The rights of parties litigant should be protected, not abused."

Not only was the conduct of appellee's attorney of such a character that objections by appellant were made, in many instances, the object of ridicule, but the witness, Baumgartner, while upon the witness stand and in the presence of the jury, was told by appellee that he did not expect him to tell the truth, and even the trial court was in substance accused of shirking its duty and told that if the court did so, appellee could find some other court that would do its duty. Courts must not be subjected to such treatment. If they submit thereto trials of men's rights will cease to be trials at all and courts will become objects of contempt rather than of respect.

The language of appellee's attorney in the closing

address to the jury, already quoted, was equally unwarranted and improper and was intended, no doubt, to unduly influence the minds of the jurors against those who had a perfect right to be in attendance upon the court and to take part in the proceedings then being conducted.

In view of the conflict in the evidence which renders the case a close and doubtful one, we cannot help but feel that the conduct complained of was so unfair and prejudicial as to make a reversal necessary.

We regret the necessity that makes a reversal necessary, but must and do adhere to the rule already announced in this court, that verdicts obtained by unfair means are of necessity short lived.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*