### Florimond Legru, Appellee, v. Penwell Coal Mining Company, Appellant.

1. TRIAL—*when conduct of counsel ground for reversal.* A new trial should be granted if prejudice results from the attempt of counsel to bring to the knowledge of the jury matters foreign to the issues involved with intent improperly to influence them.

2. EVIDENCE—*when upon question of negligence incompetent.* It is error to permit witnesses to testify whether a particular place was safe or not.

3. MINES AND MINERS ACT—*what duty not imposed upon mine manager.* The Mines and Miners Act does not impose a duty upon the mine manager to mark dangerous places and to display danger signals with respect thereto.

Action in case for personal injuries. Appeal from the Circuit Court of Christian county; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the November term, 1908. Reversed and remanded. Opinion filed May 19, 1909.

J. C. &·W. B. McBRIDE, for appellant.

HOGAN & WALLACE, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

The plaintiff recovered judgment against the defendant in the sum of $1,200, for injuries received by him through the alleged wilful failure of the defendant to comply with certain provisions of the Mines and Miners Act. To reverse such judgment this appeal is prosecuted by the defendant.

The second original count of the declaration charges in substance that on December 10, 1906, plaintiff was at work in room No. 6 off of the fourth entry of defendant's mine; that it was the duty of the mine examiner under section 18 of the Miners act to inspect the place where plaintiff was expected or required to work and observe any dangerous conditions therein, and to inscribe on the walls with chalk the month and day of his visit, as required by law; that the conditions in said room, particularly the neck thereof, were unsafe, by reason of improper and unsafe construction thereof, by reason of the roof and walls not being properly or sufficiently supported by props or other means, through its mine examiner failing to perform such duty; that it was also the duty of the defendant under said statute to allow no one to enter said room or place and work except under the directions of the mine manager until the conditions should be made safe; that the defendant permitted the plaintiff to enter said room for work, when the conditions were unsafe, and that while the plaintiff was engaged in his regular duties in said room in the neck thereof, a large quantity of slate and coal fell from the roof of the neck thereof upon the plaintiff, and injured him.

The first additional count alleges that under section 16 of said act it was the duty of the mine manager to examine the various working places in the mine as often as practicable and see that all dangerous places above and below, in and about said mine, were properly marked and danger signals displayed wherever required; that said mine manager wilfully failed to properly mark said dangerous places in the neck of the room and to display danger signals with reference thereto, whereby the plaintiff was injured.

The evidence discloses that on the morning of November 10, 1906, the plaintiff and his father were at work in a room of the defendant's mine, taking out coal at different points along the pillar. When they had finished up at one place and were about to move up to another point of the pillar, nearer the entry, it

became necessary to move the track and lay it to connect with the new place. Track-layers thereupon proceeded to remove the track and relay it. The evidence introduced by the plaintiff tends to show that while they were so engaged he and his father remained idle, but that when the work of relaying the track was completed they went to the entry and procured an empty car and that while his father was pulling and plaintiff was pushing the car into the room, and as they were passing through the neck of the room, a large quantity of coal fell from the side of the neck and injured the plaintiff; that the side of the neck was dangerous, and that plaintiff had so notified the pit boss on two different occasions, and further that at that time there was a squeeze on in said neck. The evidence adduced by the defendant tends to show that while the track men were in the room relaying the track, the plaintiff and his father stopped a car in the neck of the room and proceeded to knock down coal from the east side of the neck and load it into the car; that after they had loaded one car and started to load another, the plaintiff struck the coal in the east rib of the neck with his pick, causing the coal to fall from about four feet up on the side and strike the plaintiff and catch his leg between the coal and the car, breaking both bones of the leg between the knee and ankle.

The evidence was in sharp conflict and the case exceedingly close upon the facts. It was therefore especially important that no error should intervene upon the trial. August Legru, Sr., the father of the plaintiff, testified on cross-examination in answer to questions propounded to him by counsel for the defendant, that he had a conversation with one Kiefer, a bookkeeper employed by the defendant, and had told him how the accident happened, and that he, the witness, signed a written statement shown to him. On re-direct examination the witness further testified that Kiefer got him to sign the paper. The following colloquy then occurred:

"Q. Just tell Kiefer's words as near as you can?

Objected to; overruled; defendant excepts.

A.   There wasn't much to it.   When he come there was no conversation very much; when he come there he told me this was an insurance paper, and then I signed my name to it.

Defendant moves to exclude answer.   Overruled; defendant excepts.

Counsel for defendant:   Counsel for plaintiff remarked, 'That is what we were after'; we except to it.

Counsel for plaintiff:   Not in the hearing of the jury, or addressed to either.

Counsel for defendant:   It was spoken in the hearing of the jury.

Counsel for plaintiff:   That was a side remark of counsel addressed to his associate, and addressed to his associate only.

Counsel for defendant:   That is not correct Mr. Wallace.   Mr. Wallace's statement is not correct.

Counsel for plaintiff:   I will say it is a great deal nearer correct than a remark that you have made."

Kiefer was afterward called by the defendant and testified as to the conversation in question.   On cross-examination counsel for plaintiff asked the witness: "Did you say anything to his father about the insurance company?"   The question was objected to, and the objection overruled.   The witness was then asked: "Well, did the insurance company have anything to do with your visit there?" to which question an objection was sustained.

The views of this court as to the attempts of counsel to bring to the knowledge of the jury matters foreign to the issues involved with intent to improperly influence them are announced in Parlin v. Scott, 137 Ill. App. 454; Emery v. DeHart, 130 Ill. App. 244, and Wullner v. Smith-Lohr Co., 145 Ill. App. 486, and it is unnecessary to repeat them here.

The court over the objection of appellant permitted a number of witnesses to testify whether the neck of the room was safe or not.   The admission of this evidence was error.   Yarber v. R. Co., 235 Ill. 589; Hart v.

Penwell Coal Co., 146 Ill. App. 155; Wullner v. Smith-Lohr Co., *supra*.

By the fourth instruction given for the plaintiff, the court erroneously instructed the jury that if they believed from a preponderance of the evidence that the mine manager wilfully violated the provisions of the Mines and Miners Act "by wilfully failing to mark said dangerous places or wilfully failing to display danger signals with reference thereto, where they were required," then their verdict should be for the plaintiff. No such duty is required of the mine manager by the statute. Parrish v. Coal Co., 143 Ill. App. 118.

For the reasons referred to the judgment must be reversed and the cause remanded.

*Reversed and remanded.*