### JOHN CURRAN v. CHICAGO GREAT WESTERN RAILROAD COMPANY AND OTHERS.[1]

November 17, 1916.

Nos. 19,581—(31).

**Negligence — contributory negligence — evidence.**

1. Plaintiff's intestate was killed at a railroad crossing by collision with a car of one of defendants. The evidence sustains a finding that defendants were not negligent and that deceased was negligent.

**Trial — requested instructions read to jury.**

2. Defendants' counsel in his argument read to the jury some instructions he had requested the court to give. No error can be predi-

[1]Reported in 159 N. W. 955.

Note.—The question of right of municipality to require safety gates at railroad crossings, is discussed in notes in 3 L.R.A.(N.S.) 141; 45 L.R.A.(N.S.) 946.

Authorities passing on the question of power of municipality to regulate speed of trains at highway crossings, see note in 17 L.R.A.(N.S.) 561.

As to liability of street railroad for injuries by street car collision with vehicle or horse, see notes in 25 L.R.A. 508; 49 L.R.A.(N.S.) 505.

cated on the reading of instructions which the court later gave. The record does not show that counsel read any that were not given.

**Argument to jury by two attorneys on one side.**

3. It is discretionary with the trial court to permit two attorneys on the same side to argue the case to the jury.

**Motion for new trial — objection to requested instructions.**

4. When an instruction is given by the court which is in harmony with requests to charge made by one of the parties, that party cannot on motion for new trial complain that the instruction was erroneous.

**Trial — requested instructions — proper procedure.**   ·

5. It is bad practice to announce to the jury that certain instructions given were requested by one of the parties, but it is not ordinarily reversible error if the court makes it clear that the instruction is given as the law of the case.

**Electric car on steam road governed by rules of steam road.**

6. An electric car operated on the tracks and right of way of a steam railroad company, and in the manner in which such roads are operated, is governed by the rules applicable to the operation of steam railroads, and not by those applicable to the operation of street cars.

**Railway crossing — city not liable for failure to enact ordinance.**

7. The passage by a city of ordinances requiring gates at railroad crossings is the exercise of a governmental function, and a city is not liable in damages for failure to exercise such power.

Action in the district court for Rice county by the administrator of the estate of Arthur Curran, deceased, against the Chicago Great Western Railroad Company, the Minneapolis, St. Paul, Rochester & Dubuque Electric Traction Company, the city of Faribault and A. E. Markis, to recover $7,500 for the death of his intestate. The separate answers set up the contributory negligence of decedent. The case was tried before Childress, J., who at the close of the testimony granted the motion of defendant city for a directed verdict, and a jury which returned a verdict in favor of the other defendants. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Moonan & Moonan,* for appellant.

*Lucius A. Smith, Robert Mee* and *R. T. Boardman,* for respondents.

HALLAM, J.

On May 14, 1914, Arthur Curran was riding in a one horse delivery wagon driven by a friend on a street in Faribault. Curran was killed at a railroad crossing by a collision with an electric car of the defendant Electric Traction Company. The car was being operated on the tracks and right of way of the defendant Chicago Great Western Railroad Company into and out of Faribault, on the way from Northfield to Mankato. Plaintiff alleges negligence in the operation of the car at an excessive rate of speed, and without giving proper warning of its approach. Defendants deny negligence and allege contributory negligence on the part of deceased. The jury found for defendants. Plaintiff appeals.

1. Plaintiff contends that the verdict is not sustained by the evidence. The evidence is conflicting. Plaintiff's witnesses testified that the train approached the crossing at a speed of 25 to 30 miles an hour, without sound of bell or whistle, and that deceased and his friend were proceeding cautiously. Defendants' witnesses testified that the train was going not to exceed 6 miles an hour, with the bell constantly ringing, that the whistle was sounded a short distance away, and that deceased and his friend approached the crossing "driving a very speedy rate," and without the exercise of proper care. The determination of the questions of negligence and contributory negligence was peculiarly within the province of the jury, and their verdict should not be disturbed.

2. Plaintiff assigns as error that the court permitted defendants' counsel to read to the jury a number of his requests for instructions which were not given or approved by the court. It does not appear from the record before us that the counsel did do anything of the kind. The fact is he had submitted to the court a number of requests for instructions. In his argument to the jury he commenced to read them. How far he read does not appear. Plaintiff's counsel objected. After some colloquy, during which the court stated that he had not examined the proposed instructions, counsel proceeded with his argument, but it does not appear that he read further. The statute provides for submission to the court of requested instructions before argument, and provides that the court shall mark opposite each whether "given" or "refused," and that any instruction approved may be read to the jury by either party as part of his argument. G. S. 1913, § 7802. Many of defendant's requested instructions were

finally given by the court. No prejudice could well arise from reading any instruction which the court actually gave, whether previously so marked or not. Whether he read any that were not given does not appear. No error is shown.

3. Two attorneys representing the same defendants were permitted to argue the case to the jury, dividing the same amount of time allowed to the plaintiff. The regular order of argument was maintained, and plaintiff's counsel had the closing argument. Argument by two attorneys for one side is unusual, but such details must be left to the discretion of the trial court. There was no error here. 1 Thompson, Trials (2d ed.) § 928; Kaime v. Trustees of Village of Omro, 49 Wis. 371, 5 N. W. 838; Lewandowski v. State, 70 Wis. 458, 36 N. W. 21.

4. Plaintiff assigns as error the instruction of the court that an ordinance of the city of Faribault providing that railroads shall not run their cars to exceed six miles an hour might be taken into consideration with all the other evidence in the case in determining whether or not this car was run at an unreasonable rate of speed, but that the ordinance was not conclusive on this point. The law on this subject is not in doubt. Where a statute imposes some regulation intended for the protection of the public, the violation of such a statute is negligence *per se*. Schaar v. Conforth, 128 Minn. 460, 151 N. W. 275. This rule applies as well to an ordinance as to a statute if the ordinance be a valid one. We do not pass upon the validity of the ordinance. It is enough to say that plaintiff's first and second requests to charge cover this subject, and they differ very little from the charge as given. They are long and we will not reproduce them. The court was not asked to charge that the violation of the ordinance was negligence *per se,* nor did the requested instruction convey that meaning. The statement that disobedience of the ordinance was not negligence *per se* was in harmony with the instruction requested. No exception was taken to it. The instruction given was not accurate, but the court was led to give it by the conduct of plaintiff, and plaintiff is not now in a position to challenge its correctness.

5. After charging the jury at some length, the court said:

"That is all I have to tell you. These are the issues and what I have

to say to you. Here are some requests on the part of both sides which I will read to you. There are a large number of requests on both sides, but I am not going to read all of them. I will read some of them."

This is assigned as error. It is bad practice to announce to the jury that certain instructions given have been asked for by one or the other of the parties. It tends to weaken the force of the instruction, and the instruction may be given more or less weight as one or the other counsel has gained the confidence of the jury. Dodd v. Moore, 91 Ind. 522. If the court believes that a requested instruction should be given, it is better to give it without comment as to whence its suggestion came. Ordinarily, however, this is not of sufficient consequence to warrant setting aside a verdict if the court has made it clear that the requested instructions are given them as the law of the case. This it is claimed the court did not do in this case. No such objection was made at the time. Both parties assumed that the instructions asked for by the other side, and which the court read, had been given to the jury, and they excepted thereto. A charge is to be construed from the practical standpoint of the jury. The real question is, what might the jury have understood from the language of the court. Mailand v. Mailand, 83 Minn. 453, 86 N. W. 445. We think the jury must have understood that these requested instructions were not read to them without purpose, but that they were to be taken as statements of the law. See Bailey v. Grand Forks Lumber Co. 107 Minn. 207, 209, 119 N. W. 787.

6. The court instructed the jury that "the rights of a railroad company and a traveler at a crossing are regarded as equal, except that the railroad company ordinarily has the right of way." Counsel concedes that this is a proper rule applicable to steam railroads, but contends that it is not applicable to an electric road with one car. It has been held that this rule does not apply to street car companies operating upon the streets of a city, and that in such case neither the street car nor the passenger can be said to have a right of way. Shea v. St. Paul City Ry. Co. 50 Minn. 395, 52 N. W. 902; Bremer v. St. Paul City Ry. Co. 107 Minn. 326, 120 N. W. 382, 21 L.R.A. (N.S.) 887; Pickell v. St. Paul City Ry. Co. 120 Minn. 340, 139 N. W. 616. The difference between these two classes of railways arises, not from the difference in the motive power used, but from the difference in the manner of operation, and from the more ex-

clusive and proprietary character of the railroad right of way. We see no ground for distinction between trains because of the kind of power by which they are propelled. Nor do we think it important that the "train" consists of but one car. This car was not a street car. It was operated on the tracks and right of way of a steam railroad and in the manner in which steam railroads are operated. The rules applicable to steam railroads govern.

7. It is charged that the city of Faribault was negligent in permitting this car to run upon a city street without requiring gates at this crossing. The omissions complained of were in the failure of the city to exercise properly its governmental powers, and, upon familiar principles, negligence cannot be predicated upon such omission. 28 Cyc. 1289b.

Order affirmed.