## ELMER SWANSON v. WALDO SWANSON.[1]

January 31, 1936.

No. 30,531.

*H. L. & J. W. Schmitt* and *Charlotte Farrish,* for appellant.
*John E. Regan,* for respondent.

STONE, JUSTICE.

Action by brother against brother to recover for personal injuries resulting from an automobile collision. Plaintiff had a verdict. Defendant appeals from the order denying his alternative motion for judgment notwithstanding or a new trial.

[1]Reported in 265 N. W. 39.

The accident occurred about 3:30 p. m. December 29, 1933. Defendant was driving his Plymouth coupé westerly on a paved highway 20 feet in width with nine-foot shoulders. The road lay due east and west and was closely flanked on the south side by a railroad. Plaintiff was an invited guest sitting on the extreme right of the one seat. Between him and defendant, who was driving, sat the latter's wife. Just before the collision both brothers noticed another car, driven by one Kroschel, coming from the west. Approaching from the same direction and at about the same distance on the railroad was a train. Both automobiles were traveling at about 40 miles per hour. Some smoke and steam was being wind-driven from the locomotive over the highway. At first it did not obscure the Kroschel car. But a moment later there came a blast of steam of such volume and density that it completely obscured that vehicle from the view of those in defendant's machine. Defendant drove on into the cloud thinking it would clear up. It did so momentarily, giving defendant a glimpse of the Kroschel car a short distance ahead. Immediately, what in the evidence is sometimes referred to as the second blast of steam or smoke came over the highway, and the collision occurred. It was of such violence as to stop both cars almost instantaneously, and each was thrown to its side of the highway. They came to rest almost, if not quite, facing each other, with their front wheels on and their rear off the pavement.

The complaint was not drawn on the theory that defendant was liable because he had negligently gotten off his own side of the road and over the center line to the south. No mention of such action is made as part of the negligence charged. The most specific allegation is that, defendant's vision completely cut off, he "negligently continued to travel at a high and dangerous rate of speed in said steam and smoke," thereby causing the collision.

Defendant's failure to stop was almost, if not quite, withdrawn from the jury by an instruction that: "You cannot find that the defendant could have stopped his car before the accident occurred and after he entered the first gust of steam under the facts appearing in evidence." What is called "the second gust of steam" came

so suddenly thereafter that the action was necessarily continuous and very rapidly so. It would be difficult to find on the evidence that, if it were negligent not to stop or check his speed before defendant entered the first cloud of steam, he could be charged with negligence alone because he did not stop or check his speed before entering the second fog. The obscurity was almost continuous with only enough of a momentary letup to give him the one glimpse of the Kroschel car, which is all that he had after once getting into the cloud.

The jury was given, in general terms, the statutory rule as to defendant's duty to drive "upon the right half of the traveled portion of the highway, unless it is impracticable to travel on such side." There was also an instruction that if "there was not sufficient time to avoid the accident or to stop the defendant's car before the crash, and the defendant then involuntarily drove his car so that a part thereof was somewhat to the left of the center line of the highway, * * * then your verdict must be for the defendant." We have already quoted the portion of the charge dealing with defendant's failure to stop. The instruction last quoted was such that it should have prevented the jury from finding against defendant unless they were convinced that he voluntarily drove to the left of the center line. The trouble there is that our search of the record fails to disclose any syllable of testimony justifying the conclusion that defendant voluntarily drove to the left of the center line. There is evidence indicating that just before the collision his left wheels may have been over that line. But, traveling as he was, his vision entirely obscured (of that the evidence leaves no doubt) something more would be needed to establish the element of volition demanded by the charge. It may be that the charge on this point was too favorable to defendant. But it was the law of the case for the jury.

■ In that status of the case we come to another factor, the added weight of which requires a new trial. Plaintiff was an important witness in his own behalf. A written statement had been procured from him as speedily as possible by Miss Farrish, of counsel for defendant. It was once amended at plaintiff's request. He

was promptly given copies of original and amended statements. It speedily appeared at the trial that they were beyond legitimate criticism, both as to substance and origin. They were carefully and honestly procured and were true unless plaintiff himself was guilty of falsehood. Notwithstanding all that, counsel for plaintiff persisted in questioning the documents and the manner of their procurement. He went so far that the trial judge had to tell the jury that he was all wrong and that they should disregard his efforts to besmirch the statements procured by Miss Farrish.

Some such writings are dishonestly procured or fraudulently garbled by the one who takes and transcribes them. But diligence in performance of duty frequently requires that a lawyer, charged with either prosecution or defense of such a case as this, procure statements from prospective witnesses as promptly as may be. They are not to be criticized for so doing. They would be subject to criticism for doing otherwise. There is about the memory of some witnesses a kaleidoscopic and manipulable quality against which it is often impossible to take enough precaution. If the work is honestly done, it deserves nothing but commendation. We cannot condone tacitly or otherwise the action of counsel who, after it appears that the statement of a witness has been truly taken with fairness, persistently endeavors to make a jury believe that there is yet something reprehensible clinging to it. Such procedure is misconduct.

True, under 3 Mason Minn. St. 1934 Supp. § 5687-8, "any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent for use in the trial of any action for damages for injuries sustained by such person or for the death of such person." The presumption so created disappears completely and for the whole case immediately evidence demonstrates that there is nothing fraudulent about the document in question. Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134. Illustrative of the completeness with which a mere presumption, opposed by real evidence, "falls out of the case" is Del Vecchio v. Bowers, 296 U. S. 280, 286, 56 S. Ct. 190, 80 L. ed. 163, 166. That obvious truth was inexcusably ignored by

counsel for plaintiff. He ignored it not only in respect to the statement procured from plaintiff but also in his treatment of a similar statement procured from witness Kaehler. There also the trial judge properly instructed the jury to disregard any argument based upon the supposed fraudulent character of the writing, leaving to them only the question as to whether a diagram in the preparation of which Kaehler had assisted had been improperly omitted as part of the statement.

Ordinarily on a question of misconduct we yield to the decision of the trial judge either way. In this case, however, we cannot do so. As already indicated, the case is unusually close on the merits. Furthermore, the fact that defendant was insured was well disclosed. With such a setup, the added element of persistence of plaintiff's counsel in questioning the character of demonstrably honest and complete statements procured from plaintiff, and his same attitude toward the substantial portion of a similar statement procured from witness Kaehler, which was shown to have been honestly procured, make a case which we are constrained to hold requires a new trial.

The order under review is reversed.

HILTON, JUSTICE (dissenting).

I dissent. The prevailing opinion concedes that on the merits the case was a "close one." On the evidence, then, the jury might have returned a verdict for either the plaintiff or the defendant, and such verdict would have been upheld by this court. A reading of the record establishes beyond doubt that both plaintiff's counsel and defendant's counsel frequently were "off side" and indulged in improper colloquy. However, because of the misconduct of plaintiff's counsel a new trial is ordered. As to whether a new trial should result because of misconduct is almost wholly discretionary with the trial court. State v. Hass, 147 Minn. 269, 180 N. W. 94; Renn v. Wendt, 185 Minn. 461, 241 N. W. 581; The Marckel Co. v. Raven, 186 Minn. 125, 242 N. W. 471; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283. Here I think there was no abuse of that discretion. The trial court heard the testimony, actually ob-

served the misconduct and noted its effect, if any, on the jury. Because thereof, it was in a much more·favorable position than is this court, which has only the cold record before it, to judge whether the misconduct of counsel for one party was so prejudicial as to require a new trial. In the instant case we should not say that substantial prejudice resulted to either party.

I. M. OLSEN, JUSTICE (dissenting).

I concur in Mr. Justice Hilton's dissent.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.