HERBERT DOSE v. ARWOOD YAGER AND ANOTHER.[1]

April 28, 1950.

Nos. 35,111, 35,112.

[1]Reported in 42 N. W. (2d) 420.

*Moonan, Heinen & Lindmeyer* and *John M. Fitzgerald,* for appellant Arwood Yager.

*Snyder, Gale, Hoke, Richards & Janes* and *Nathan A. Cobb,* for appellant Byron Bunge.

*Streissguth & Berens,* for respondent.

LORING, CHIEF JUSTICE.

This action arises out of a collision between an automobile owned and operated by defendant Yager, in which plaintiff was a passenger, and an automobile owned and operated by defendant Bunge. Plaintiff had a verdict against both defendants. From orders denying defendants' alternative motions for judgment or a new trial, defendants have appealed.

We state the evidence as we are compelled to weigh it in its most favorable aspects to the verdicts. The collision occurred September 25, 1947, at approximately 4:30 in the afternoon at a point about one mile north of the village of Norwood in Carver county at an intersection of state aid road No. 6, which runs north and south, with county aid road No. 103, which runs east and west. No. 6 is a main highway and is protected at the intersection by a stop sign erected on No. 103 near the northeast corner of the intersection and 71 feet east of the center line of the main highway. Near the southeast corner of the intersection there is a group of farm buildings (the Miller farm) strung along No. 6, consisting of a medium-sized farmhouse, a small corncrib, a one-car garage, a small barn, and a small outbuilding, arranged in that order, from north to south. There are a number of shade trees in the vicinity of the farmhouse, on the north and south sides, and also along the corncrib. The photographs in evidence show that, except close to No. 6 and between it and the corncrib, the trees are so trimmed that only their

trunks, in addition to the buildings, interfered with the view between the highways. To particularize, the farmhouse is 42 feet south of the center line of county road No. 103 and 41 feet east of state road No. 6. About 23 feet south of the Miller house is a garage (10.3 x 16 feet); farther south and about 225 feet from the intersection is a barn (28.6 x 40 feet); and south of that a much smaller building. South of the barn, the view of each road from the other is without obstruction across level land for a distance of several hundred feet along each road. There is again a view along each road between the Miller buildings.

Defendant Yager was driving west on No. 103 and defendant Bunge north on No. 6. As Bunge approached the crossing and before he got to the Miller barn, he saw Yager's Pontiac at a point about 447 feet from the intersection. A witness testified that, as Yager passed the point where Bunge claimed he first saw Yager, Bunge's new Mercury was about 500 feet from the intersection or about the same distance away from it as Yager. There was evidence tending to prove that Bunge was then traveling at 60 to 70 miles per hour and that he continued toward the intersection without slackening his speed until he got beyond the Miller house and "approximately 40 feet" from the center of the intersection. There was also evidence that he could then see Yager "through the trees" and that Yager was coming at a high rate of speed. Bunge was familiar with this intersection, the presence of the Miller farm buildings, and the grove of trees which partly obstructed the view toward the east, and he knew that there was a stop sign. Yager, on the other hand, had never been over this section of the county road before. As he approached the intersection, he was watching for a lake to his left. This lake, which he expected to see, was a landmark, near where he had been told to turn off No. 103. He testified that he did not see the state road behind the Miller buildings nor did he see Bunge's Mercury. He did not see the stop sign on his right, which was 71 feet east of the center line of No. 6. The two cars collided near the center of the intersection, the Bunge car striking the left side of

the Yager car with great violence. Both cars ended up in the ditch in the northwest part of the intersection.

The principal issue is whether the evidence supports the verdict for plaintiff as to each defendant. We consider first the Yager appeal.

■ Yager's evidence was directed at showing that the stop sign was obscured by weeds and that it was turned so that the face of the sign was not at right angles with the road. It is his contention that the evidence conclusively shows that view of the sign was obstructed and that it was impossible for a reasonably prudent person to see it in time to stop.

We have carefully examined the record relative to the condition of the stop sign, and, while the evidence was in conflict, there was ample support for a finding that the sign was plainly visible. The verdict disposes of the question of Yager's negligence in failing to stop and its proximate causal connection with the collision. As to him, the verdict must stand.

■ We come to defendant Bunge's appeal. The finding of negligence on his part is predicated on excessive speed at the intersection and failure to use due care after he saw the Yager car. As above stated, one witness for plaintiff, who was in a field nearby, testified that the Bunge car was going from 60 to 70 miles per hour as it came north toward the intersection. This witness did not see the actual collision, but he testified that Bunge "slowed down awful sudden when he got down north of the barn there. That is when I noticed he got out of my sight and I heard the brakes squeak." The speed of the Bunge car—a new Mercury—was such that the Yager car was lifted off the ground, thrown through the air across the road ditch, and against a pole.

If Bunge was traveling at an unlawful speed, he forfeited his right of way. M. S. A. 169.20, subd. 1; Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525; see, Kunkel v. Paulson, 197 Minn. 107, 266 N. W. 441.

Section 169.14, subd. 3, provides:

"The driver of any vehicle shall, *consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * *.*" (Italics suppled.)

Obviously, this admonition applies with double force when the view at the intersection is partly obstructed. Bunge had seen the Yager car approaching the intersection when he was south of the Miller barn, at which time the evidence tended to prove that Yager was going at a high rate of speed. He knew that the view of the intersection was partly obstructed as to both cars, yet he failed to slacken his speed as he approached it until he saw the Yager car in front of him and it was too late to avoid the collision. He had paid no further attention whatever to the Yager car after he saw it coming some 450 feet from the intersection, although he might have seen it had he looked again between the farm buildings. There was evidence that at the time he first saw the Yager car it was traveling 55 to 70 miles per hour. Under those circumstances, we conclude that the evidence, as a whole, reasonably tends to support a finding of negligence on his part and that such negligence was a contributing proximate cause of the collision. Mahowald v. Beckrich, 212 Minn. 78, 2 N. W. (2d) 569; Duffey v. Curtis, 193 Minn. 358, 258 N. W. 744; Hayden v. Lundgren, 175 Minn. 449, 221 N. W. 715; Hustvet v. Kuusinen, 184 Minn. 222, 238 N. W. 330; Brown v. Murphy Transfer & Storage Co. 190 Minn. 81, 251 N. W. 5. See, Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758.

■ Bunge contends that the trial court erred in excluding testimony of deputy sheriff Kermit R. Lohmar, who interviewed defendant Yager and plaintiff at the Glencoe Hospital shortly after the accident for the purpose of making an official report, required by § 169.09, subd. 8. When counsel for Yager brought out that Lohmar was at the hospital in his official capacity for the purpose of making a report and that he had refreshed his recollection previous to the trial from his copy of the official report, objections to further testimony were sustained under the statute. See, § 169.09, subd. 13, as amended by L. 1947, c. 114, § 1.

We need not decide whether the objections were properly sustained because the exclusion was not prejudicial to Bunge. The evidence which counsel for Bunge offered to prove by Lohmar was that either plaintiff or Yager said, in the presence of the other, that Yager was going 50 to 55 miles per hour when he went through the stop sign. In view of the testimony by numerous witnesses as to the speed of Yager's car, Lohmar's testimony was cumulative at most. 5 Dunnell, Dig. & Supp. § 7184. It is clear that its exclusion did not change the result of the trial. The evidence tended to show Yager's negligence and not Bunge's freedom from negligence. Since the jury found against Yager, Bunge was not prejudiced by its exclusion.

■ Bunge contends that the court erred in cautioning the jury to disregard a statement made by his counsel wherein he said that he objected to counsel for Yager cross-examining the witness Mausehund "on the ground that it already appears conclusively in this case that Defendant Yager is guilty of negligence which was the proximate cause of the accident." The court's action in reproving counsel for the manner and form of his objection is criticized, suggesting that it put counsel for Bunge in a bad light before the jury. A new trial will seldom be granted on this ground. City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N. W. 812, 48 L.R.A.(N.S.) 842, Ann. Cas. 1914D, 804; Faunce v. Searles, 122 Minn. 343, 142 N. W. 816; State v. Schmidt, 155 Minn. 440, 193 N. W. 954; 5 Dunnell, Dig. & Supp. § 7098. We are of the opinion that the court's remarks were not prejudicial. The statement, even if true, was not a valid ground for the objection. The ruling and remarks of the court were within its discretion.

■ The trial court did not err in restricting the closing argument of counsel for Bunge relating to one Wesley, who took the witness Brawnworth's statement of the accident. Over objection by counsel for Yager, the trial court read from Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39, wherein this court disapproved of counsel's endeavoring to persuade the jury that there was something reprehensible in promptly securing a statement from a witness

after an accident, where the evidence tended to show that the statement of the witness had been truly taken. The restriction, if it occurred at all, was proper in view of the Swanson case. See, Krenik v. Westerman, 201 Minn. 255, 275 N. W. 849.

■ The trial court was within its discretion in reading from a legal decision applicable to the case at bar. See, Steffenson v. C. M. & St. P. Ry. Co. 48 Minn. 285, 51 N. W. 610.

■ Bunge contends that the court erred in refusing his requested instruction that—

"If the stop sign on Defendant Yager's right as he approached State Aid Road No. 6 was visible to him, it was his duty to see and heed it, and to stop his automobile at a place where he could efficiently observe the traffic approaching on the State Aid Road, and to yield the right of way to the Bunge automobile approaching from the south if it constituted an immediate hazard."

The court charged the jury as follows:

"* * * The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

The instruction given by the court was more favorable to Bunge than the requested instruction, and, moreover, the jury found against Yager. Bunge has no ground for complaint.

■ Bunge's final assignment of error pertains to the manner in which the court gave his requested instruction No. 6. The instruction was to the effect that the driver upon a highway which he knows to be protected by a stop sign may assume, until he sees or should see otherwise, that a driver approaching the intersection will respect the right of way of other vehicles which are approaching

so closely on the protected highway as to constitute an immediate hazard. After reading this instruction, the court stated that it was subject to and modified by the general charge. Of this, Bunge complains.

The right of a driver on a through highway to assume that another driver approaching on an intersecting highway will heed the stop sign is not absolute. It exists only where the first driver is traveling at a lawful rate of speed and is lost entirely if the driver on the thoroughfare is traveling at an unlawful speed. In any event, the jury might well have found that the surrounding circumstances would give notice to a person of ordinary prudence that the warning of the stop sign might be ignored. If so, the driver should act accordingly and take appropriate precautions. The statute requiring reduced speed at intersections bespeaks precaution, even from those having the right of way. Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525; Kunkel v. Paulson, 197 Minn. 107, 266 N. W. 441. Hence, the comment by the court was entirely proper.

Orders affirmed.