FRANCELLA FORTIER v. RITTER'S HAIRDRESSING STUDIOS, INC.

164 N. W. (2d) 897.

February 7, 1969—No. 39944.

*David O'Connor* and *O'Connor, Collins & Abramson,* for appellant. *Donald E. Gross,* for respondent.

Heard before Knutson, C. J., and Nelson, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Defendant, Ritter's Hairdressing Studios, Inc., seeks a new trial solely upon the claim of a prejudicial reprimand of its counsel made by the trial judge in the presence of the jury.

Plaintiff brought this action to recover a $3,000 downpayment made when she, then a minor, purchased the personal property of a St. Paul beauty shop from defendant Ritter's Hairdressing Studios, Inc.,[1] for $8,500 under a conditional sales contract. A trial before a jury resulted in a verdict in favor of plaintiff, which verdict was subsequently approved by the trial judge when he denied defendant's motion for a new trial.

After purchasing and operating the beauty shop for a short time, plaintiff closed it and left the state. All of the property included in the contract of sale was thereafter recovered by defendant in a replevin action, was returned "in good order," and subsequently was resold to a third party for $8,500. It was undisputed that at the time of the execution of the contract defendant was aware of plaintiff's minority. In sup-

---

[1] The action against defendant George Ritter was dismissed at the commencement of the trial.

port of this action, plaintiff testified that prior to reaching her majority there were discussions with defendant concerning disaffirmance of the contract and resale of the property, and that immediately after reaching her majority she disaffirmed the contract through her attorney. Defendant denied repudiation and claimed that after plaintiff became 21 she acquiesced in the contract and by word and conduct reaffirmed and ratified it. These were the two significant issues raised and submitted to the jury for decision.

Sometime early in the trial, defendant's counsel disclosed his intention to call one Daniel Jeans as a witness on defendant's behalf, who would testify to the effect that plaintiff did not intend to repudiate the contract and had requested him to operate the shop because she had become pregnant out of wedlock and had to leave until the child was born. The admissibility of the evidence as to plaintiff's pregnancy was discussed a number of times by counsel and the court in chambers. Upon plaintiff's objection that such evidence would be highly prejudicial to her case, the court ruled it inadmissible and instructed defendant's counsel to admonish the witness to make no reference whatsoever to plaintiff's pregnancy. On the last day of the trial, Jeans was called. Having been warned by defendant's attorney not to testify about plaintiff's pregnancy, he began to testify instead that during an evening meeting when plaintiff called upon him, "upset [and] crying, * * * she indicated to [him] that—." Whereupon the trial judge, obviously unaware that this conversation dealt in part with plaintiff's pregnancy, interrupted and instructed the witness:

"The Court: No, no, no, not what she indicated to you, but what did she say?

"The Witness: What did she say to me?

"The Court: Don't say what she indicated. See, that calls for a conclusion. What did she say that indicated to you? What did she say or do—

"Mr. O'Connor [defendant's attorney]: If you can remember, either her exact words or in substance what she said to you.

"The Witness: You want her exact words?

"Mr. O'Connor: If you recall, yes.

"The Witness: Her exact words that she was pregnant, and she would have to leave town."

Thereupon, the trial judge turned to defendant's counsel and said:

"I knew you would get this in sooner or later. I warned you against it. I said it was improper, and you said you told him not to talk about it."

In a conference in chambers which immediately followed, defendant's counsel apparently for the first time made clear the relevance of this evidence, and it was promptly and correctly ruled admissible. Plaintiff's motion for a mistrial was denied, and defendant's counsel, after it was conceded that he had not violated his promise to the court, requested the judge to correct the impression of untrustworthiness, which would inevitably be drawn from the rebuke. The trial judge, after agreeing to "take full blame" himself, instructed the jury that, while this evidence was relevant, he would leave it up to them to assess defendant's attorney's motive in bringing it out. He further stated:

"Now that is all I have to say except that I do not want the jury to be prejudiced one way or other by what the court said with respect to this matter because the court has no right to affect your judgment. It has no right to direct your judgment because you are the sole judges of the facts and the credibility of the witnesses' testimony and the weight to be given, not the courts; you are."

It is clear that the judge's remark was improper, and his correcting instructions, including complimenting counsel for their cooperation in his final instructions, left much to be desired. The influence which a trial judge has over lay jurors, unaccustomed to the courtroom atmosphere, is so great that he must be extraordinarily careful to avoid all acts, signs, words, gestures, or tones of voice which might indicate to the jury either hostility or partiality toward a litigant or counsel. See, Schwartz v. Wenger, 267 Minn. 40, 124 N. W. (2d) 489; Hansen v. St. Paul City Ry. Co. 231 Minn. 354, 43 N. W. (2d) 260. While a trial judge must have the power to discourage and eliminate impropriety or misconduct by attorneys at trial, even to the point of delivering a guarded and temperate reprimand in the presence of the jury, Hansen v. St. Paul City Ry. Co.

*supra,* any such comment is so likely to have a substantial impact on the jurors that it is almost always preferable that it not be made in their presence. See, Schwartz v. Wenger, *supra.*

However, it is only in those rare cases where the remark of the trial judge was so prejudicial to one party that it rendered a fair and impartial determination by the jury improbable that this court will grant a new trial. Dose v. Yager, 231 Minn. 90, 42 N. W. (2d) 420. See, Hansen v. St. Paul City Ry. Co. *supra.*

On this appeal defendant makes no assertion to cast doubt on our impression that the evidence upon the two simple issues submitted preponderates in favor of plaintiff, or that the verdict has ample support. Apart from the pleadings and the court's charge, only a partial transcript of Mr. Jeans' testimony makes up the record. Upon a careful examination of this limited record, we cannot say that the reprimand had such a prejudicial effect upon the jury that a new trial is warranted.

Affirmed.