MARGARET K. MARTIN v. WALTER COURTNEY.[1]

August 3, 1900.

Nos. 11,999—(192).

**Trial—Language of Attorney—Judgment notwithstanding Verdict.**
Upon the trial, plaintiff's attorney, in the presence of the court and jury, made use of certain language in reference to a decision of the supreme court. *Held*:
1. It was prejudicial in its effect upon the jury.
2. It was error for the trial judge to refuse to direct the attorney to withdraw it.
3. It was error to refuse to instruct the jury to disregard it.
4. Evidence examined, and *held*, that it was not error to refuse to grant a motion by defendant for judgment notwithstanding the verdict.

Action in the district court for Crow Wing county by plaintiff, as administratrix of the estate of Joseph A. Martin, deceased, to recover $5,000 damages on account of the death of decedent. The case was tried before Holland, J., and a jury, which rendered a verdict in favor of plaintiff for $2,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*How & Butler* and *W. S. McClenahan*, for appellant.
*F. D. Larrabee* and *F. M. Nye*, for respondent.

1 Reported in 83 N. W. 503.

LEWIS, J.

For the third time this cause comes to this court for review. In some respects, its history is remarkable, and it is after mature deliberation that we now attempt a consideration of the striking events attending the last trial in the court below. The first time the case was here, it became the duty of the court to point out that the wrong party had been made defendant. Martin v. Northern Pac. B. Assn., 68 Minn. 521, 71 N. W. 701. Upon the second appeal the proper rule was defined in respect to expert witnesses, and the inherent weakness of plaintiff's case, as presented by the evidence, was set forth. Martin v. Courtney, 75 Minn. 255, 77 N. W. 813. And now it becomes the duty of this court, upon this third appeal, to pass upon questions of more importance, not only to the attorneys engaged in the case, but of grave concern to the courts and to the legal profession in general. A strong appeal is made on behalf of appellant that an end be made to this long and expensive litigation, by ordering a judgment for the defendant notwithstanding the verdict; but, after reading the record, it is the opinion of the court that under the rule established in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958, the motion should not be granted. And, inasmuch as a new trial must be ordered on other grounds, it is neither necessary nor advisable to review the evidence with reference to its sufficiency to support the verdict.

In the course of the trial below, while plaintiff's medical expert witness was under cross-examination as to his qualifications as such, and after defendant's attorney had attempted to show that the witness was not qualified, because he had for many years been a member of the opposite medical school, the question of his qualification was submitted to the court, and the following proceedings took place:

"By Mr. Butler: I now submit that this witness is not qualified to testify. (After some discussion as to the competency of the testimony of said witness, counsel for plaintiff, Mr. Larrabee, made the following statement, which was made part of the record by request of Mr. Butler:) By Mr. Larrabee: 'I say that, in my judgment, in arguing this objection of Mr. Butler's as to the introduction of the testimony of this witness upon the ground that it is incompetent— I say that, in my opinion, aside from the rule established by the

supreme court in this case, that the principles and practice of the adherents of one school of medicine shall be judged and decided by members of the same school (and that was law before they passed upon it); that, outside of that principle and rule in that opinion, I may say that, in my opinion and my judgment, the decision of the supreme court in this case was as rotten as hell itself.' By Mr. Butler: 'I wish this to be taken of record. This language was used in the presence of the court and jury, upon the trial of this case, in discussing the question as to whether or not the witness Stone was qualified as an expert witness.' The Court: 'The record may so show.' By Mr. Butler: 'I move the court to direct the counsel to withdraw the language that this decision in this case by the supreme court was as rotten as hell.' By the Court: 'It may remain.' (Defendant excepted.) By Mr. Butler: 'I move the court to instruct the jury now that the remark was improper, and should not have been made in court, and must be disregarded by them.' By Mr. Larrabee: 'I object to that, and I do not consent that this court at this time charge this jury regarding my conduct, in any respect. It is immaterial what this jury may think of my conduct. I am responsible to this court, and not this jury, for my conduct; and I now ask the court for the privilege of proceeding with my direct examination of this witness, or the further argument to the objection interposed as to the competency of this witness to testify.' By Mr. Butler: 'I move the court to direct the jury that the language used by the counsel which is heretofore referred to, viz. that the decision of the supreme court in this case is as rotten as hell, must be disregarded by them in the performance of their duty as jurors.' By Mr. Larrabee: 'I ask the court for leave to proceed with the argument of the objection.' By the Court: 'So far as this motion of Mr. Butler's is concerned, I will say that the decision of the higher court ought not to be criticised by the attorneys or this court, or others here. The motion to instruct the jury, just asked for by Mr. Butler, is denied at this time.' (Defendant excepted. The original question is here submitted, as to whether or not this witness is qualified to testify.) By the Court: 'The witness may testify.' (Defendant duly excepted.) Mr. Larrabee, resuming the direct examination: * * *''

Appellant arraigns the action of the court and attorney under three separate assignments of error: (1) That plaintiff's counsel was guilty of misconduct in using the language stated; (2) that the court erred in refusing to require the attorney to retract the statement; (3) that the court erred in refusing to instruct the jury to disregard the language.

This language was prejudicial, because it was employed with

reference to the law of the case on trial, and was calculated to prejudice the court and jury against the law which must, so far as applicable, control the deliberations of the court and jury. It was also prejudicial as tending to discredit the integrity of this court, thereby inducing the jury to believe that a wrong had been done the plaintiff by the court, which they must right. It is impossible to dispose of it by saying that it was an innocent criticism or a mere figure of speech. Attorneys must have freedom to criticise and disapprove of the decisions of the courts when arguing before either the appellant or nisi prius tribunals, but when the language employed for that purpose would be condemned by common consent as improper, or when it tends to cast suspicion of a corrupt motive on the court, the limitations have been passed. Whatever the purpose may have been in thus speaking of the decision, the effect could be nothing else than to throw discredit upon the motives of the members of the court from which the decision emanated. Coming now to the conduct of plaintiff's attorney in connection with this language, what impression must have been made upon the jury? When counsel for defendant took exception to the remarks, and requested the court to instruct the jury to disregard them, the counsel objected, and stated that it was immaterial what the jury thought of his conduct; that he was responsible for his conduct to the court, and not to the jury. If the words had been spoken hastily, in the heat of argument, or from the force of habit in the use of strong language, the opportunity to recall them was presented when informed of their serious import by the request of the opposing counsel. Instead of withdrawing the statement, and trying to place himself right with the court and in a proper attitude towards the jury, an attempt was made to justify his action by resisting the effort to remove its effect.

We cannot believe that those words were deliberately chosen to express the conviction of the speaker. It is incredible that an attorney to whom was known personally the high character of the justices then composing the court should entertain an opinion that their decisions were not established upon the basis of absolute integrity. What, then, could have been the motive in such extraordinary conduct? If it arose from a deliberate purpose to create false senti-

ment for a temporary effect, or in a reckless spirit of conscious power in being able to sway the court and jury and create a dramatic scene, in either case the result was disastrous to the administration of justice, and the action indicative of a false conception of the ethics of the profession. It is not our purpose to pose as critics of the trial judges. Their duties are arduous, and often, amidst the rapidly shifting scenes of a legal contest, they are called upon for a decision which has been denied the privilege of reflection. After making all allowances, we can account for the rulings of the court upon this occasion on no other ground than a failure to grasp the full meaning and effect of the language employed by the counsel. It was error, inexcusable error, to permit the use of such language in a court of justice without a reprimand, and to refuse to attempt, at least, to remove the effect from the minds of the jury.

For these reasons, a new trial must be granted. So ordered.