## G. M. FISHER v. ANTON WEINHOLZER and Another.[1]

November 27, 1903.

Nos. 13,738—(73).

**Vicious Dog—Reputation.**

The repute of a domestic animal for vicious propensities may be shown, to convey notice thereof to its owner; and a witness who obtained information of its character, derived from one person only, may testify on that issue.

**Misconduct of Counsel.**

In addressing the jury, counsel severely animadverted upon the character and veracity of defendant, who was a material witness in his own behalf; insinuating, upon rumor, that he was conducting an unlawful resort, of which there was no evidence. These statements were objected to when counsel threatened to repeat them, whereupon the court was requested to caution counsel, but did not do so. *Held*, that the misconduct of counsel and the failure of the court to protect the defendants' rights constituted prejudicial error.

Appeal by defendants from an order of the district court for Ramsey county, Orr, J., denying a motion for a new trial. Reversed.

*H. E. Hall,* for appellants.

*C. D. & Thos. D. O'Brien,* for respondent.

LOVELY, J.[2]

Action to recover for injuries sustained from an attack of a vicious dog owned by defendants, and permitted to run at large in their building, with knowledge of its alleged propensities to bite mankind. Plaintiff had a verdict. This appeal is from an order overruling a motion for a new trial.

Defendants were the proprietors of a saloon in St. Paul, in connection with which entertainments were given for the attraction of patrons. Plaintiff was employed by the defendant and others in the vicinity to watch their premises during the nighttime. Between one and two

[1] Reported in 97 N. W. 426.
[2] START, C. J., absent, sick, took no part.

o'clock on the morning of July 10, 1902, plaintiff, while patrolling the street in front of the saloon, which had been closed, saw a light therein, and went there to ascertain the cause. He was admitted by the porter who was in charge of the place during defendants' temporary absence from the city. The evidence is conflicting whether plaintiff asked permission to enter the saloon for a drink, or went in for that purpose at the porter's invitation. It was also disputed whether plaintiff knew that the dog was loose in the room, or whether he interfered with and provoked the animal to attack him when he was jumped upon and bitten; also whether the defendants had previous knowledge of the vicious propensities of the dog to attack and injure people. The evidence on these issues tended to support the verdict, and we are not inclined to hold that the award of $650 by the jury was excessive. We are, however, required specifically to notice two alleged errors.

Witnesses were permitted to give evidence of the dog's bad repute previous to the injury. Preliminary to a question concerning the dog's character, one of them testified that he had derived his knowledge of the dog's disposition from a talk with one person only—the porter. He was allowed, upon the knowledge so derived, to testify concerning this subject. It is insisted for appellant that such information, derived from only one person, did not justify the court in admitting his evidence tending to show that the animal was dangerous. We are not able to apply a different rule with reference to proof of the character of an animal than of an individual in respect to those attributes which would make such inquiry competent. That the vicious character of a dog may be shown by its repute in the locality where it is kept, we have no doubt. The tendency of such evidence would be to bring knowledge thereof to the owner, but it is claimed that such reputation cannot be based upon the statements regarding it of one person. While it is true that reputation is founded upon the general conversation of people in the community, it may not always be possible to establish it by those who have heard many refer to it, while a number of witnesses, hearing the statement of one only, each different from the other, might, in the aggregate, sufficiently establish it. Hence the evidence admitted had a tendency to prove the repute of the animal, and, with other testimony of a like nature given on this question, might be sufficient for that purpose; hence we cannot say that the court erred in receiving it, though we do not

decide that the statements of one person alone would be enough of themselves to justify the submission of this question.

It is claimed that counsel for plaintiff, in his closing address to the jury, exceeded the reasonable latitude allowable on such occasions. This assignment requires us to quote from that part of the record embracing the objectionable language, and the remarks of the trial judge with reference thereto. Mr. O'Brien, in the course of his argument, said:

"But I propose to say this, that when a man like Mr. Weinholzer * * * [defendant] undertakes to make his money and acquire wealth and riches in keeping the kind of place [he] does, and when the question comes as to whether he is telling the truth, or his employees are telling the truth, or a man who is in an honest occupation is telling the truth, I propose then to say that the man who leads the honest life is the best man. In other words, I don't propose to put George Fisher, or anybody else who is earning his bread by honest work, upon the level with a man who keeps an establishment like the Empire Theater and Saloon in St. Paul; and if Mr. Weinholzer expects that I stand here in my place as counsel in this court, and either dignify him by calling him names, or go to work and still lay my own decency and honesty down upon the ground and say he is as good as the man who is engaged in an honest occupation, he is going to be disappointed, because, if the truth is what rumor is about the Empire Saloon and Theater, then it is not a fit place for any man to keep, or any man to go into. And Mr. Weinholzer, who started it, and who made it—

"Mr. Hall: I think we ought to take an exception to that. Mr. O'Brien: That is right. Take exception. I am going to repeat it further. Mr. Hall: I would like the court to caution counsel.

"The Court: There is no evidence of that at all.

"Mr. O'Brien: It is the saloon and Empire Theater. Haven't we got the common knowledge that anybody may have of it? There is no other evidence in this case, excepting Mr. Weinholzer is the manager and that his wife is the proprietor of the Empire Saloon and Theater, in the city of St. Paul. Now,

then, I want to ask this jury to answer by their verdict whether the man who started and keeps and runs the Empire Saloon and Theater in the city of St. Paul is to be put upon the same level, for belief and respectability and decency and honesty and reputation, with a man that earns his living by drawing an honest salary and working with his hands or his feet? You can do as you please about that."

On the argument here, it was asserted in justification of these remarks that persons of both sexes visited and drank together at the saloon during the exhibitions given there by defendant, but this is not supported by any evidence; nor was it shown that defendant's place was resorted to for unlawful, immoral, or evil practices, or visited by persons of bad repute. Presumably it was licensed and conducted lawfully. Defendant's wife and daughter assisted him, but this did not furnish reasonable grounds for the vigorous denunciations referred to and the invidious reflections on defendant's honesty, which were based upon rumor. We do not say that the fact that defendant kept a saloon, and ran a show place in connection therewith, and dispensed drinks during the entertainments on the stage, could not be referred to, for it was in evidence, and a fair comment upon the business might be excused, yet the language indulged in by counsel went much further, and appealed to mere unestablished rumors to discredit a defendant, who had testified in his own behalf, by a severe verbal castigation, not warranted by the record. The reputable character and exalted standing of the learned counsel who indulged in these remarks forbid the conclusion that he made them in the deliberate belief of their impropriety. He is too chivalrous to refer to rumors to prejudice an adversary, without feeling that he was justified by what he had himself heard; but the rumors that may have reached him were not in evidence, and he had no right to refer to them in this way, and his well-known character only added force to unsupported statements, that must have been highly prejudicial.

It is but a reasonable supposition that the jury were led to believe that these statements would not have been indulged in, had they not rested upon the actual knowledge of the counsel making them, without proper allowance for the impressions expressed by him in his seemingly

entire adoption of his client's cause and feelings. For this reason, when the court's attention was called thereto, there being no evidence upon which to base the prejudicial assumptions and denunciations of counsel, which in the zeal engendered by opposition he proposed to repeat, then it was its plain duty at once to forbid such proposed repetition, and warn the jury against the improper effect of the unfounded statements already made, as well as to instruct them to disregard the same, which was the course we approved in Witzel v. Zuel, 90 Minn. 340, 96 N. W. 1124; but the learned trial court evidently misconceived its duty, and went no further than to say that there was no evidence to support the remarks of counsel. This was not enough, and nowhere in the charge of the court were the jury told that they must disregard unsupported statements of counsel, not based upon any legitimate evidence in the case. We cannot overlook this error, for it was very prejudicial to the defendants' rights, and well calculated to deprive them of their right to a fair trial upon the evidence submitted. Martin v. Courtney, 81 Minn. 112, 83 N. W. 503.

Order reversed and new trial granted.