WILLIAM ANDERSON v. HAWTHORN FUEL COMPANY AND OTHERS.[1]

January 14, 1938.

No. 31,357.

[1] Reported in 277 N. W. 259.

See 198 Minn. 509, 270 N. W. 146.

*Cobb, Hoke, Benson, Krause & Faegre* and *Paul J. McGough,* for appellant.

*Charles E. Carlson* and *Carl H. Wilson,* for respondent.

HILTON, JUSTICE.

In a common-law action for negligence plaintiff had a verdict for $10,025 against the fuel company and Fred Hammel. The trial court thereafter ordered judgment notwithstanding the verdict for both defendants. The order granting judgment to the company was reversed on appeal (198 Minn. 509, 270 N. W. 146) and the verdict reinstated as to it. Counsel stipulated that the judgment in favor of Hammel should abide our decision on the former appeal, and pursuant to the terms of their stipulation this judgment has also been vacated and set aside. The present appeal is taken by the company from an order denying its motion for a new trial. The facts are adequately stated in the opinion in the former appeal.

As one of the grounds for a new trial defendant company claims misconduct on the part of counsel for the plaintiff in making certain remarks in his closing argument to the jury. We are of the opinion that a new trial must be granted on that ground. The nature of these remarks and what occurred during the trial when they were made may best be shown by quoting from a portion of the record:

Mr. Carlson: "May it please your Honor, counsel for the defense, ladies and gentlemen, it is, of course, very apparent to you that we are not fighting this battle on even keel. It is, of course, very apparent to you that I am no match for a man like Mr. McGough. Mr. McGough is a member of a very large firm, the firm of Cobb, Hoke, Benson, Krause & Faegre; and I looked at their door a few days ago—

Mr. McGough: "Just a moment, just a moment. Let's save the record. That is objected to as not within the issues of this case.

The Court: "Go ahead.

Mr. Carlson: "The firm of which he is a member has in it, I believe, 24 lawyers, and Mr. McGough is the outstanding trial lawyer

of that group. Whenever there comes to that firm an important case to which there is no defense, Mr. McGough is the one that appears in court. It is only large corporations like the Hawthorn Fuel Company that can obtain the services of men like Mr. McGough. Poor men like Mr. Anderson—

Mr. McGough: "Just a minute, just a minute. That is objected to as prejudicial and made for the purpose of prejudicing this jury.

The Court: "I think perhaps it is.

Mr. McGough: "I ask the court to instruct the jury to disregard the remarks as being without foundation and prejudicial.

The Court: "I think that is probably true. I think that is true, Mr. Carlson.

Mr. Carlson: "Mr. Anderson, a man who works for the ERA, now working for the PWA—men that work for the ERA or PWA can never get the services of a man like Mr. McGough.

Mr. McGough: "Now, just a moment. To that again, if the court please, we renew our objection. It is entirely without foundation, absolutely improper, and I ask the court to admonish counsel and to instruct the jury to disregard it.

The Court: "I do not see that it has anything to do with this lawsuit. Go ahead, Mr. Carlson."

Other statements made by plaintiff's counsel in his argument are also complained of, but those we have quoted are sufficient for present purposes. The remarks were of course not based on the evidence and went entirely beyond the limits of proper argument. They called the attention of the jury to the comparative circumstances of a large, wealthy company on the one hand and a poor, unfortunate individual on the other. It was a direct appeal to sympathy, passion, and prejudice, intended to take the jury beyond the case and induce a verdict against the company, not on the ground that it was legally responsible, but because of the circumstances mentioned, which had no relationship whatever to the question of its liability.

There can be no serious claim of justification for this misconduct. It is apparent from the record that the relationship between oppos-

ing counsel was strained during the trial. The offender claims that his remarks were directed at retaliating for certain statements and conduct of defense counsel which he insists were highly improper, particularly a remark made in the hearing of the jury, that plaintiff's counsel was a "fourflusher." It will be observed, however, that these so-called retaliatory remarks were not limited to an attack on defense counsel or to retributive statements for the misconduct of the latter. Mr. Carlson chose to go further and include the references already mentioned relating to his own client and to the defendant company. The reprisal, if any, invited by the misconduct of an advocate, may in a proper case be condoned or justified if it is confined to its only proper target, the attorney who furnishes the provocation. But here, Mr. Carlson's reprisal had very little to do with Mr. McGough, and very much to do with the latter's client. By so much (enough to require reversal), it was an attack on the client rather than the offending attorney, and was misconduct which defies condonation. That also applies, but with less force perhaps, to the open reflections on Mr. McGough's firm. It was Mr. McGough, not his firm or his client, who furnished all the provocation there was.

It may also be pointed out that counsel was not content merely to start this improper line of argument, but persisted in following the same course after being interrupted by proper objection and with knowledge that the trial court thought he was being guilty of prejudicial misconduct, a fact which he undoubtedly knew even before he made the statements.

The jury was at no time admonished to disregard the statements, and no attempt was made to cure the resulting prejudice. It is therefore unnecessary for us to determine whether instructions so designed would have effectively accomplished their purpose. Although the trial court indicated that in his opinion the statements were prejudicial, he made no comment to the jury then, at the request of counsel, or later during the course of his instructions. He simply instructed counsel to "go ahead." While undoubtedly not so intended, the jury might well have construed the court's remarks as sanctioning the line of argument plaintiff's counsel was following.

We are not unmindful of the fact that the matter of granting a new trial on this ground rests largely in the discretion of the trial court, but when serious misconduct appears and prejudice is shown, it is an abuse of discretion not to grant a new trial. Romann v. Bender, 184 Minn. 586, 239 N. W. 596. Regardless of the arguments advanced by the plaintiff, the fact remains that the statements were of a prejudicial nature, and there was no attempt to remedy the wrong and counteract the poison injected into the minds of the jurors. The record reveals that the issue. as to the company's liability was close, and the verdict seems large. We cannot speculate as to the possible effect of the remarks. In all fairness, under the circumstances, a new trial must be had. While the facts generally differ in every case, the principles involved have been often considered and discussed by this court. It is not necessary to repeat what was said on those occasions. See Bjoraker v. C. M. & St. P. Ry. Co. 103 Minn. 400, 115 N. W. 202; Smith v. G. N. Ry. Co. 133 Minn. 192, 158 N. W. 46; Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251; Krenik v. Westerman, 201 Minn. 255, 275 N. W. 849; 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) §§ 7102, 7103.

Nothing we have said herein is to be construed as in any way approving of the misconduct of defense counsel in making the remark already alluded to, concerning his opponent. While the remark was made during a heated exchange with opposing counsel, nevertheless, upon objection of the latter, it became the immediate duty of defense counsel to withdraw the remark and openly apologize to both the court and his opponent, and he was not relieved from the performance of this duty by the court's instruction to the jury to disregard the remark. His demeanor at the time the incident occurred made it necessary for the court to question the jury in order to determine whether he had made the remark, and his failure to perform his obligations under the circumstances made his conduct all the more condemnable and merited a severe reprimand. His conduct in certain other instances was not above reproach, and it should not be necessary to caution both counsel to make every effort to prevent a repetition of the unnecessary and unpleasant

tactics engaged in by them both during the first trial. They are experienced trial lawyers and are fully aware of the rules of conduct imposed on attorneys for the trial of their cases.

Since there must be a new trial, it is unnecessary to consider the other assignments of error, relating to the size of the verdict and the sufficiency of the evidence to sustain the jury's finding on the issue of whether or not plaintiff was an invitee of the company.

Reversed.

GALLAGHER, CHIEF JUSTICE, and LORING and PETERSON, JUSTICES (dissenting).

We are in full accord with what is said by the majority as to the prejudicial character of the remarks of plaintiff's counsel and the fault of the trial court in not taking immediate charge of the situation by proper directions to jury and counsel. Standing alone, this should compel a new trial, but where defendant's counsel was guilty of such personal abuse toward plaintiff's counsel as was Mr. McGough in this case, the inference is irresistible that he was purposely arousing anger with the hope that prejudicial remarks would follow. It seems to us unjust that he should benefit by the very conduct his remarks were calculated to incite. The obligations of the profession demand that in court counsel conduct themselves with courtesy not only toward the court but toward opposing counsel. Personal abuse like that here under consideration was of such a character as to require immediate intervention by the trial court. Abusive remarks across the table should not be tolerated. After such an offense the court might well forbid talk across the table unless its permission be first obtained. Such is the rule in some states at all times. Certainly such an offense should vitiate any claim on the part of the offending party for a new trial based on conduct which his offense tended to invite. We hold counsel to strict accountability for remarks calculated to arouse prejudice. Opposing counsel should be brought to realize that conduct calculated to incite such remarks is equally reprehensible.