STATE v. SAMUEL M. STERN.[1]

April 10, 1941.

No. 32,703.

*McMeekin & Quinn,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, *James F. Lynch,* County Attorney, and *William F. Desmond,* Assistant County Attorney, for the State.

LORING, JUSTICE.

This case comes here upon an appeal from a conviction under the habitual criminal act, 2 Mason Minn. St. 1927, § 9931, the defendant having been convicted of the crime of performing an illegal operation. An information was lodged against him of a prior conviction in the state of California for the embezzlement of an automobile. Subsequent to his conviction in that state and after the term of his sentence there imposed had been completed, he was pardoned by the governor of that state "in order to restore his citizenship."

The sole question presented by this appeal is whether the prior conviction in California may be used against the defendant as a basis for double sentence under the habitual criminal act notwith-

[1]Reported in 297 N. W. 321.

standing the pardon. Generally speaking, there is a diversity of authority upon the question, the courts of Virginia, Ohio, Oklahoma, Louisiana, and Texas taking the view that the pardon blots out guilt and wipes out the offense, which is then regarded as never having been committed; whereas New York, Kentucky, and Washington, besides California, are of the opinion that the pardon has no such effect and that the defendant may be adjudged a prior offender and given the increased punishment as such.

We think that on the narrow question here before us the supreme court of California has answered it by holding that a pardon in that state does not effect the blotting out of the offense but is immaterial and no bar to a conviction under the habitual criminal act. It is true that in the cases from that state which have been called to our attention the pardons were by governors of other states than California; but from the language used in People v. Biggs, 9 Cal. (2d) 508, 71 P. (2d) 214, 116 A. L. R. 205, and People v. Dutton, 9 Cal. (2d) 505, 71 P. (2d) 218, it is quite obvious that the supreme court of that state would apply the same reasoning to pardons granted there. In People v. Biggs, the court said (9 Cal. [2d] 514, 71 P. [2d] 217, 116 A. L. R. 205):

"We are unable to see how the pardon, relieving the offender from the effects or disabilities of his first crime, can in addition prevent the normal application of the statute punishing him for a subsequent offense. In its provisions for increased punishment for prior offenders, the legislature could doubtless make an exception in favor of persons pardoned, if it had reason to believe that such persons, though found guilty of a subsequent offense, were no more dangerous to society, because no more criminal in character, than persons first convicted. It has not seen fit to do so, and unless it does, *this court cannot usurp the legislative function of determining the appropriate punishment for offenders coming within the statutory classifications.*" (Italics supplied.)

In the Dutton case, 9 Cal. (2d) 505, 71 P. (2d) 218, it was contended that because Dutton in his plea to the governor of Wis-

consin for a pardon of the prior offense had urged his innocence the court must assume that the pardon had been granted upon that ground; but the California court held otherwise and stated that the defendant's innocence was not established by his request for a pardon on that ground. We mention that holding because it is stated here that Stern urged innocence in his application to the governor of California.

The holding of the California court is strongly supported by the courts of New York in People v. Carlesi, 154 App. Div. 481, 139 N. Y. S. 309, affirmed, 208 N. Y. 547, 101 N. E. 1114, which held that a pardon by the President of a person convicted of a felony in the federal courts did not wipe out the offense and that the federal conviction could be used in a prosecution under their habitual criminal act. This case was subsequently appealed by the defendant to the Supreme Court of the United States, where substantially every question which could be raised under the constitution of the United States was presented by the appellant. The Supreme Court affirmed the New York court. Carlesi v. People, 233 U. S. 51, 34 S. Ct. 576, 58 L. ed. 843. We are in accord with the views expressed by the appellate division, which was subsequently affirmed above. The court there said (154 App. Div. 486, 139 N. Y. S. 312):

"The pardon of this defendant did not make 'a new man' of him; it did not 'blot out' the fact or the record of his conviction, and of course, the Supreme Court, in deciding that the Congress could not impinge upon the pardoning power of the Executive did not intend to hold that the Executive could blot out a solemn record of the judicial branch of government. (See Roberts v. State of New York, 30 App. Div. 106, 51 N. Y. S. 691; 160 N. Y. 217 [54 N. E. 678].) The pardon in this case merely restored the defendant to his civil rights. If it had been granted before his term of imprisonment had been served, it would also have relieved the defendant of that. But it did not obliterate the record of his conviction or blot out the fact that he had been convicted. (Mat-

ter of ——, an Attorney, 86 N. Y. 563.) It relieved the defendant of the consequences which the law attached to his offense. But the defendant is to be punished now solely in consequence of his second offense. The fact of the former conviction is an element merely in determining the criminality of the second offense. (People v. Sickles, 26 App. Div. 470, 50 N. Y. S. 377; 156 N. Y. 541, 51 N. E. 288; People ex rel. Cosgriff v. Craig, *supra* [195 N. Y. 190, 88 N. E. 38].) The Legislature of this State has said that one who commits a crime, after having been convicted of another crime, is a greater offender than as though he had not previously been convicted, and the punishment inflicted is solely for the second offense to which a greater degree of criminality is thus attached. That degree of criminality is not at all lessened by the fact of a pardon which assumes his guilt, remits the punishment and affords him an opportunity to become a law-abiding citizen. It was solely within the province of the Legislature to attach such greater criminality to the second offense from the mere fact of a conviction for a first, and the Executive by the exercise of the pardoning power could no more interfere with that exercise of legislative power than the Legislature could interfere with the power to pardon."

This view is supported, too, by the modern holdings that a pardon does not so wipe out an offense that it may not be used as impeachment against a witness, although, the conviction being shown, the pardon may also be shown. 4 Wigmore, Evidence (3 ed.) § 1116.

The philosophy of the law relative to the effect of a pardon has progressed to a more practical consideration of actualities since the opinion in Ex parte Garland, 4 Wall. 333, 18 L. ed. 366.[2] No doubt the legislature in not excepting pardoned prior offenses from the habitual criminal act had in mind that if a pardon were grant-

---

2NOTE: Ex parte Garland was decided in 1866 and involved the effect of the harsh provisions of the congressional act of January 24, 1865, prohibiting the admission to the bar of the Federal courts of any lawyer who could not take an oath that he had not borne arms against the United States, or

ed on the ground of innocence the pardon board could and doubtless would bear this circumstance in mind in connection with an application for commutation of the second sentence. That board, as set up in this state, has facilities for determining innocence and whether there was a miscarriage of justice.

The conviction below is affirmed, and the sentence is ordered executed.

---

lent aid, encouragement, or support to those in armed hostility to it. The court held, speaking through Justice Field, that the act was punishment for past conduct and as such a bill of pains and penalties forbidden by the constitution as a bill of attainder. It held further that a pardon by the President blotted out the existence of guilt.

In United States v. Wilson, 7 Pet. 150, 160, 8 L. ed. 640, Chief Justice Marshall stated the nature of a pardon as "an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed." See also Burdick v. United States, 236 U. S. 79, 89, 35 S. Ct. 267, 59 L. ed. 476.