ESTHER I. RIAN v. R. L. HEGNAUER.[1]

July 11, 1941.

No. 32,687.

*Regan & Regan,* for appellant.
*Putnam & Carlson,* for respondent.

PETERSON, JUSTICE.

This is an action for wrongful death.

Decedent sustained injuries in a collision of defendant's automobile with his on May 24, 1939. He died on August 19, 1939. Plaintiff claimed that the injuries thus sustained were a contributing cause of death.

The collision occurred at about four o'clock in the afternoon in the country on a highway extending east and west at a point about 165 feet east of an intersecting road extending north and south. Both cars were eastbound. There was a schoolhouse at the northeast corner from which children were departing. Decedent stopped to pick up a boy who had just left the school to give him a ride home. Defendant ran into the rear end of decedent's car while it was standing still. The parties give conflicting versions as to how the collision occurred.

[1]Reported in 299 N. W. 673.

Plaintiff's evidence was that when decedent was in the intersection defendant was on a hill about 500 feet to the west; that decedent started to slow down and came to a full stop about 165 feet east of the intersection on his right side of the road; that he gave no stop signal, but when he was stopping a red light flashed showing that the brakes were being applied; and that when decedent stopped defendant was in the intersection.

Defendant's version was that both drivers were going about 25 or 30 miles per hour; that he was about 100 feet behind decedent following him; that just prior to the collision he was watching the school children, some of whom were on the travelled part of the highway and would be endangered if he turned either to the right or left; that he gradually crept up on decedent; that when decedent stopped his car he stopped as quickly as he could; that he did not turn to the right or left for fear of hitting a child; and that he permitted his car to "glide" into the rear end of decedent's.

There was testimony that defendant could have avoided the collision by turning to the right or left without danger to any of the children.

The collision was with such force and impact as to push decedent's car forward some 50 or 60 feet and to cause the fracture of decedent's second and fifth cervical vertebrae.

Plaintiff's cause of action sounded in negligence. Defendant denied that he was negligent and alleged that decedent was guilty of contributory negligence.

The evidence was conflicting whether or not the collision caused decedent's death. It was undisputed that decedent was suffering from incurable glomerular nephritis, which is a deterioration and absorption of the kidney substance or tissue with much impairment of the function of those organs. Plaintiff's medical testimony was that decedent might have lived about ten years; that he might have died anytime from the disease; that the disease was the primary and that the injuries were a "contributing" cause of his death. Defendant's medical testimony was that decedent died

solely of the disease and that the injuries were not in any sense a cause of death. Plaintiff had a verdict of $3,200, and defendant appeals.

The evidence made the alleged negligence of plaintiff and causal connection of such negligence with decedent's death as well as the several defenses open fact questions.

Although numerous errors are assigned, we discuss only the one question of claimed misconduct of plaintiff's counsel, since decision on that point requires a new trial.

The claim is that plaintiff's counsel was guilty of misconduct in his closing argument. Twice he stated that he would leave the grave robbing and desecration of right of burial to defendant's counsel and the insurance company. Several times he referred to defendant's counsel as "Doctor Regan." He stated that the reason for defendant's failure to stop was that his car had no brakes or that those it did have were faulty. He also said that a statement signed by decedent probably was not read to him. All these statements except that last mentioned are assigned as error.

The testimony showed that an insurance company had charge of the defense and was active preparing the defense from the time of the accident. That was apparent from the testimony of both parties. Plaintiff is not chargeable with "dragging" the insurance company into the picture. In preparing the defense a claim adjuster representing the insurance company and a doctor obtained the consent of the widow to perform an autopsy, which she gave upon condition that decedent's attending physician was present. An unsuccessful effort was made to obtain his presence. The autopsy was then performed without his presence.

The argument of defendant's counsel was not reported. There was an issue, whether or not the vertebrae were fractured. Defendant's counsel argued that the vertebrae should have been produced at the trial by plaintiff as real evidence of the disputed fact.

Defendant's counsel also argued that the evidence did not support plaintiff's claim that the injuries sustained by decedent as a result of the accident had anything to do with his death.

There was no allegation in the pleadings and no testimony that defendant's car had no brakes or that the brakes were faulty.

The statement signed by decedent was received without objection upon proof of his signature. The statement recited that it had been read to decedent. There was no testimony to show that the recital was not true.

A trial should be a solemn inquiry to ascertain the truth upon which the rights of the parties depend. The entire effort should be directed to and limited by that purpose. Anything that does not contribute to such purpose should be rigorously excluded. Argument of counsel is a recognized aid for determining the truth. Great latitude should be enjoyed by counsel in argument. Exaggeration is not necessarily improper. The evidence may justify strong and vituperative language.

The grave robbing and desecration of burial remarks of plaintiff's counsel were in answer to the argument of defendant's counsel that plaintiff should have produced the vertebrae. Defendant through its agents had disturbed the corpse to examine the vertebrae and then replaced them. Presumably they were buried with the decedent. Interference with a corpse except by the consent of the person entitled to the right of burial is a trespass. Sworski v. Simons, 208 Minn. 201, 293 N. W. 309. The widow had such right. The autopsy was wrongful since it was not performed according to the conditions which she imposed. Desecration of the right of burial there was, but no grave robbing. The latter statement was exaggeration. It is clear that counsel referred to the wrongful interference with the corpse and that no one understood anything different. These remarks were justified by the evidence.

It was utterly improper for plaintiff's counsel to ridicule defendant's counsel and prejudice the jury against him by calling him "Doctor Regan" and casting him in a false role. Such conduct is a breach of ethics and the proprieties. The court should have stopped plaintiff's counsel on its own motion. Brown v.

Burrow, 171 Minn. 219, 213 N. W. 890 (calling counsel a "poor sport," a "short sport"); Levinson v. Fidelity & Cas. Co. 348 Ill. 495, 181 N. E. 321; Parlin & Orendorff Co. v. Scott, 137 Ill. App. 454; Tuck v. Springfield Traction Co. 140 Mo. App. 335, 124 S. W. 1079. Instead of stopping the remarks when objection was made, the court below sanctioned the same by stating that there was no misconduct.

The vice in failing to restrain such conduct goes deeper than affording personal protection to counsel who is the butt of abusive and ridiculing argument. Of course counsel was entitled to protection. It is no part of the function of counsel to be a contestant except in a true forensic sense. The fundamental reason for not permitting conduct such as is complained of is that it prostitutes the functions of a trial. After all, it is the litigants, not counsel, who are the parties. Their rights are dependent on the facts of the case, not their or their counsel's peculiarities or idiosyncrasies. Counsel are in no way involved except as they exercise a franchise to advocate on behalf of the litigants. The facts are to be determined by ascertaining the truth from all the evidence. Personal ridicule and abuse of counsel interfere with the success of the process by diverting the inquiry from the issues to counsel. Arguments directed to the person of a disputant are universally condemned in all forensic contests as extraneous to the issues and an obstruction to their consideration upon the merits. The supposed advice of an old lawyer to a young one to try opposing counsel when he had no case illustrates the technique involved. It may have its humorous incidents and be proper for purposes of amusement, but it has no place in the trial of a lawsuit. The rights of the parties should not be made to depend on such irrelevant incidents.

The trial judge has an affirmative duty so to direct the trial that all effort will be directed to ascertain the truth. He should restrain and suppress anything that interferes with that purpose. He should not permit the issue to be shifted from the claims of the parties to the personality of counsel.

We do not dilate on the obvious impropriety of counsel's going out of the record. There was no excuse for it. Here again the trial court should have been alert to keep counsel within due bounds.

We disapprove the conduct of plaintiff's counsel and the failure of the trial court to restrain him in the respects mentioned.

A new trial should be granted only where it appears that the misconduct interferes with the administration of justice to the substantial prejudice of a party. Where, as here, it is apparent that an insurance company is in charge of the defense and presumably will pay a judgment in favor of plaintiff if he prevails, the rules of fair trial should be strictly observed. Where, as here, the issues for the jury's determination are open questions of fact the interests of justice require that there be a new trial free from the passion and prejudice which prevailed below. Anderson v. Hawthorn Fuel Co. 201 Minn. 580, 277 N. W. 259; Krenik v. Westerman, 201 Minn. 255, 275 N. W. 849; Jovaag v. O'Donnell, 189 Minn. 315, 249 N. W. 676.

Reversed and new trial granted.

HOLT, JUSTICE (dissenting).

I dissent. The only impropriety I see in counsel's argument was in adding the title of "Doctor" to defendant's counsel, even though he had displayed the skill and given the opinion of a medical expert. Whatever impropriety occurred in counsel's argument did not prejudice defendant, for the verdict is not large.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in the dissent.