STATE v. JOSEPHINE DELORES ZECHER.

128 N. W. (2d) 83.

March 26, 1964—No. 38,730.

*Josephine Delores Zecher,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Albert E. Ranum,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a judgment convicting defendant of the crime of abortion in violation of Minn. St. 617.18.

■ Defendant questions the adequacy of the evidence to sustain her conviction.

Mrs. Rita Jepsen and Kenneth Trudeau were the key witnesses for the state. Mrs. Jepsen testified that on September 4, 1961, defendant made the attempt to induce her abortion by use of a catheter in a bedroom of the defendant's home. An incomplete abortion followed. Mrs. Jepsen required medical attention on September 7. Defendant arranged for a doctor's services on that day and drove her to a hospital for emergency treatment. Trudeau testified that he gave defendant's telephone number to Mrs. Jepsen so that she could arrange for an abortion; that he discussed the matter with defendant, paid her for some drugs and antibiotics, and spoke to her on September 8 by telephone about ways to induce Mrs. Jepsen to conceal the truth concerning the event.

In view of this testimony we cannot agree that defendant was entitled to acquittal as a matter of law.

■ The question of whether a new trial should be granted is also before us. State v. Clark, 114 Minn. 342, 131 N. W. 369; State v. Cole, 240 Minn. 52, 59 N. W. (2d) 919. Defendant details many circumstances in an attempt to establish that the trial lacked the fairness required by the Federal and state constitutions. U. S. Const. Amends. V and XIV; Minn. Const. art. 1, §§ 6 and 7.

We note that defendant, professedly for financial reasons, perfected her own appeal, with only occasional legal help. She typed her own

brief and made her own oral argument. Understandably, many of the circumstances she has so painstakingly put forward do not, at law, uphold her objections. Others, however, we believe sufficient to justify a new trial.

The record shows a series of impressions created by the prosecution detrimental to defendant's reputation. The effect is a portrait of dissoluteness extremely prejudicial to defendant's case, but having almost no credible evidentiary support. Inferences recommended to the jury must be supported by the evidence, not by counsel's opinions or conjectures. State v. Meany, 262 Minn. 491, 115 N. W. (2d) 247; State v. Gulbrandsen, 238 Minn. 508, 57 N. W. (2d) 419.[1]

The impression was effectively given that defendant was living on a scale substantially above that allowed by her legitimate income; that she was involved in a meretricious relationship with her major witness; that she was long a familiar person to the police under the nickname "Dovey"; and, most prejudicial of all, that she was an abortionist by avocation.

These impressions, unsubstantiated but systematically created, justify defendant's appeal. State v. Haney, 219 Minn. 518, 18 N. W. (2d) 315; Fisher v. Weinholzer, 91 Minn. 22, 97 N. W. 426. As was made clear in State v. Gress, 250 Minn. 337, 84 N. W. (2d) 616, interference with a defendant's right to a fair trial necessarily moves the court. Whether this be done by cross-examination, as in the Gress case, or in other ways, this court's reaction must be the same. In the Gress case we stated (250 Minn. 348, 84 N. W. [2d] 624) that counsel's remarks

---

[1]The prosecutor is "never justified in * * * stating as a fact anything except what the evidence tends to prove, or which he in good faith expects to prove." State v. Clark, 114 Minn. 342, 344, 131 N. W. 369, 370. In State v. Morgan, 235 Minn. 388, 391, 51 N. W. (2d) 61, 63, this court found grounds for a new trial in the prosecutor's closing argument, because it presented matter not proven but generative of prejudice. "There is nothing to indicate that he [defendant] was * * * 'burning with a hellish lust.' * * * Clearly, the argument of counsel for the state had the effect of inflaming the jury's passion and prejudice against defendant to the point where the verdict may have been influenced thereby at the cost of justice to defendant."

500

attributing unchastity (for which more foundation was given than is true here) to a young woman accused of forgery to undermine her credibility were "most likely to be applied by the jury unfavorably to the accused in their consideration of the issues involved and not restricted to their proper scope." We held that under the circumstances and in the interest of justice a new trial should be had.[2]

In this case the effect of the insinuations upon the jury's deliberations probably was substantial. The issue presented the jury was one of credibility—whether the jurors believed Mrs. Jepsen and Trudeau or defendant and two witnesses called by her who related a credible alibi directed to the time at which the crime allegedly was committed. The value of their testimony should have been measured by the jury without a shadow of unsubstantiated accusations against defendant's character. The facts raise grave concern as to the verdict. It will not do to have matters not properly in evidence affect the jurors' decision.

Having found serious prejudice to have created, we will not try to measure the effect it had upon the verdict. This court must uphold the primacy in criminal cases of a fair presentation and consideration *in the trial court* of facts admissible in evidence. State v. Pavlovich, 245 Minn. 78, 71 N. W. (2d) 173. In other situations where the evidence convicting defendant was more conclusive than here, this court has refused to act as "a super-jury." State v. Flowers, 262 Minn. 164, 114 N. W. (2d) 78;[3] State v. Reardon, 245 Minn. 509, 73 N. W. (2d) 192.

---

[2] In a prior case, this court said: "* * * [T]he net result necessarily was to create a prejudicial impression with the jury by insinuating that defendant was of a character likely to commit crimes of a nature similar to the one with which he was charged. It was very much like proving the crime in issue by proof of other independent and separate offenses. The state is not permitted by means of the insinuation or innuendo of incompetent and improper questions to plant in the minds of the jurors a prejudicial belief in the existence of evidence which is otherwise not admissible and thereby prevents the defendant from having a fair trial." State v. Haney, 219 Minn. 518, 522, 18 N. W. (2d) 315, 317.

[3] The court stated in the Flowers case (262 Minn. 168, 114 N. W. [2d] 80): "* * * [I]t was clearly error for the prosecutor to ask questions in a

A second circumstance we note which conduces to our decision, was the repetition of unsuccessful attempts by the prosecutor to place before the jury defendant's maiden name. We see no purpose for it in this particular case except to cast a suspicion upon defendant by linking her to offenses of this nature and blackening her character by crimes she did not commit.

The third regrettable circumstance was the implication in the prosecution's opening statement that Mrs. Jepsen's husband would testify for the state. A resumé of his anticipated testimony was given and later an attempt was made to put it before the jury by hearsay from Mrs. Jepsen. The prosecution either knew, or should have known by due diligence, that this witness was in a hospital in Denver, Colorado, and in such condition as to preclude his appearance at trial.

Proper objections were made by defendant's counsel. They brought forth this statement from the prosecution:

"Mr. Lynch, I might inform you that you are not putting a gag on the State and you can't confuse things here by these dilatory tactics."

It is not a unique comment in this record. As we made clear in Rian v. Hegnauer, 210 Minn. 607, 610, 299 N. W. 673, 674, where a new trial was ordered:

"A trial should be a solemn inquiry to ascertain the truth upon which the rights of the parties depend. * * * Great latitude should be enjoyed by counsel in argument. * * *

* * * * *

"* * * Personal ridicule and abuse of counsel interfere with the success of the process by diverting the inquiry from the issues to counsel."

---

form which disparaged defendant's character without supporting such charges by competent evidence. * * * The court there [in State v. Nelson, 148 Minn. 285, 181 N. W. 850] noted that questions which assume the existence of damaging facts may be put in such a manner, and with such persistency and show of proof, as to impress a jury that there must be something wrong, even though the defendant fully denies it and there is no other evidence."

It is our conclusion that the limits of vigorous prosecution were so far exceeded as to give defendant the right to another trial. State v. Silvers, 230 Minn. 12, 40 N. W. (2d) 630.

■ As stated, defendant appears before this court without the assistance of an attorney. At oral argument she asserted her innocence with evident sincerity, saying that her only concern is the effect of the conviction on her reputation and, more particularly, on the welfare of her children. Her present status is such as to confirm this assertion.

Defendant was sentenced to the State Reformatory for Women according to law on March 15, 1962. The court at once stayed and suspended this sentence and placed her under the supervision of the probation officer of Ramsey County for a term of 4 years. His authority was Minn. St. 1961, §§ 610.37 and 610.38 (repealed by L. 1963, c. 753, art. II, § 17, and replaced by c. 753, § 609.135).

The probation officer on September 6, 1963, recommended that defendant "be honorably discharged from probation." On the same day the court ordered that "Josephine Zecher is hereby discharged from probation, restored to all her civil rights and to full citizenship with full right to vote and hold office the same as if said conviction had not taken place." The authority for this order is in the Criminal Code of 1963, L. 1963, c. 753, effective September 1, 1963. Section 609.165 thereof provides in part:

"Subdivision 1. When a person has been deprived of his civil rights by reason of conviction of a crime and is thereafter discharged, such discharge shall restore him to all his civil rights and to full citizenship, with full right to vote and hold office, the same as if such conviction had not taken place, and the order of discharge shall so provide.

"Subd. 2. The discharge may be:

"(1) By order of the court following stay of sentence or stay of execution of sentence; or

"(2) By order of the adult corrections commission or youth conservation commission prior to expiration of sentence; or

"(3) Upon expiration of sentence."

The extent to which this restoration to civil rights eliminates the conviction has not been fully determined. In State v. Stern, 210 Minn.

107, 297 N. W. 321, it was stated that conviction of a felony was a fact usable to impeach a witness even though he had been pardoned. We do not know the effect of the order of restoration, for example, upon Minn. St. 43.14 which gives to the civil service director discretion to refuse to admit to examination for the state civil service a candidate "who has been guilty of any crime involving moral turpitude or of infamous or notoriously disgraceful conduct."[4] We are certain, as a practical matter, that the jury's verdict of guilty in this case, in spite of the order of restoration, will have profound adverse effects upon defendant and her children throughout their lives. The result of reporting this conviction in response to an inquiry appearing in an application for private employment is self-evident and illustrative. Although there are circumstances where the right to appeal may be waived by an acceptance of relief which by its nature implies an admission of guilt, 4 Am. Jur. (2d) Appeal and Error, § 274, we do not have such a case here where the defendant has vehemently asserted her innocence at all stages of the proceedings.

Before ordering a new trial in this case, however, we must be certain that defendant recognizes that an order of this court granting her a new trial does not exonerate her of the crime of which she has been charged. She can, and probably will, be tried again. If found guilty, she is subject to imprisonment in the State Reformatory for Women for 4 years,[5] and there is no requirement that sentence be suspended. Whether it is advisable for the defendant to expose herself to the hazards which may follow a new trial should call for careful and well-informed deliberation on her part, and her decision should not be made without the specific advice of legal counsel on this point.

---

[4]For other problems which may arise, see Opinion Attorney General, No. 341-i, March 2, 1956, relating to the effect of a full pardon under one of the recidivist statutes, Minn. St. 1961, § 610.28, (now replaced by L. 1963, c. 753, § 609.155) and Opinion Attorney General, No. 260a-11, October 8, 1959, involving disqualification from jury service for conviction of "any infamous crime" after issuance by the governor of a certificate restoring civil rights. See, also, Opinion Attorney General, No. 218-G, November 23, 1948.

[5]Minn. St. 617.18.

It is our conclusion, therefore, that a new trial will be granted to defendant in the interests of justice if she files with this court within 20 days from the date that this opinion is filed a statement in writing that she has secured advice with respect to the implications of a new trial under the information which has been filed against her and that, having such advice, she is prepared to assume the risks to which she will then be exposed. If such a written statement is filed, an order will issue from this court granting a new trial in the above-entitled matter; if not, a new trial will be denied.

The final order of this court will be entered 20 days after this opinion has been filed to permit the action contemplated by the decision.

On May 1, 1964, the following opinion was filed:

PER CURIAM.

A written and verified statement having been filed by Josephine Delores Zecher stating that she has secured legal advice with respect to implications of a new trial, and that being so informed, she considers a new trial to be in her best interests, it is ordered and directed that the judgment of conviction be and hereby is reversed. The matter is remanded to the district court for a new trial.

Reversed and remanded.