## HERBERT REESE, SR. v. ROSS & ROSS AUCTIONEERS, INC., AND OTHERS.

149 N. W. (2d) 16.

February 17, 1967—No. 39,990.

*Neville, Johnson & Thompson,* for appellants.
*Lyman Brink* and *Robert W. Gislason,* for respondent.

SHERAN, JUSTICE.

Appeal from an order of the district court denying defendants' motions for judgment notwithstanding the verdict or a new trial.

A Hennepin County jury awarded approximately $21,000 to Herbert

Reese, Sr., of Greenbush, Minnesota, to be paid by Ross & Ross Auctioneers, Inc., a corporation, and its employees, Don Marsolais and Percy N. Ross, as damages for a fraud perpetrated in connection with an auction sale held at Thief River Falls, Minnesota, on October 13, 1960. Defendants, acknowledging that the evidence is adequate to sustain the verdict, urge that a new trial should be ordered because:

"Respondent's counsel committed gross misconduct when he repeatedly asked questions regarding the bankrupt proceedings of a second corporation controlled by appellant Percy Ross when such information had previously been excluded by the Court; when respondent's counsel presented Mr. Reese as a poor desolate man who had lost his entire life's savings as contrasted with the wealthy Mr. Ross who earns a $100,000.00 per year salary and who owned expensive real estate and diamond rings;[1] when respondent's counsel made continual references to Mr. Reese's arthritic and rheumatic medical conditions purely to raise sympathy from the jury;[2] when respondent's counsel injected references to respondent's brother being a priest, his sister a Catholic nun and his son a deputy sheriff,[3] all to play on the feelings of the jury, along with

---

[1] Defense counsel did not object to the elicitation of testimony as to plaintiff's financial status, but did make timely objection to plaintiff's closing argument in which reference was made to plaintiff having been talked out of his life's savings. The evidence with respect to the salary, the real estate, and the rings was legitimate in that pursuant to an alternative contract claim plaintiff was endeavoring to pierce the corporate veil of Ross & Ross Auctioneers, Inc., and the residential real estate and rings had been that defendant's only tangible assets and had been transferred to Mr. Ross and to Mrs. Ross' father prior to this suit.

[2] Counsel referred to plaintiff's physical condition on four separate occasions during his questioning of witnesses and three times during final argument. Defense counsel objected only to the final argument. Although the references ostensibly related to plaintiff's reasons for allowing defendants to conduct an auction sale for him, the unnecessary repetition bespeaks a motive to prejudice the jury.

[3] Defense counsel, probably because of an aversion to appearing opposed to religion or law enforcement, did not object at the time these matters were evoked, but later raised these matters in chambers in unsuccessfully moving for a mistrial.

the attempted creation of a feeling of small town honesty encompassing respondent; when respondent's counsel made numerous derogatory remarks as to Mr. Ross' character which go well beyond fair comment on the evidence; when respondent's counsel attacked appellants' counsel for being 'unfair' and 'scheming' to exclude evidence, with additional references to the fact appellants had required two previous attorneys who 'delayed' the proceedings in contrast to respondent's law associate who presently holds an honorable position with the State government; and, when respondent's counsel brought to the attention of the jury that a previous lawsuit arose from an auction held at Le Mars, Iowa.[4] In addition, respondent, himself, deliberately misinformed the jury to further the case of his sympathetic position, and to eliminate any attack on his credibility.[5] * * * To cap all that proceeded, respondent's counsel disclosed the highly prejudicial information that appellant Ross' former business associate, a former attorney by profession, is presently incarcerated in a state institution." [6]

We have examined the record with care and feel that the trial judge would surely have been justified in ordering a new trial and would have done so had he not been satisfied that the admitted and clearly established facts were such as to dilute the impact of the improprieties in the context of this unique case.

In his memorandum made a part of the order denying the post-trial motion, the trial judge states:

"There was evidence introduced by the plaintiff which was inadmissible

---

[4] Plaintiff's counsel was properly inquiring as to a garnishment arising out of a Le Mars auction, and moved into a prohibited area by asking about the lawsuit. An immediate objection was sustained.

[5] Defendants supported this claim through affidavits accompanying their post-trial motion. Although the ground for the trial court's ruling was lack of prejudice, it should be noted that plaintiff also presented an affidavit tending to show he made no deliberate misstatement.

[6] Plaintiff's counsel inquired as to this matter knowing what the answer would be. A belated objection was sustained and the judge instructed the jury to disregard the testimony. Plaintiff's attempted explanations as to how this matter could have been thought relevant are not satisfactory.

and which would have been excluded on proper objection or stricken from the record on proper motion regarding plaintiff's life savings and his family connections as well as reputation in the community. Since the defendants did not object to this evidence nor move to have it stricken, the defendants are not now in a position to complain of its admission. In the Court's opinion, this improperly admitted evidence did not affect the result in the action.

"There was conduct on the part of the plaintiff's counsel in several respects which could be held to be improper. The Court's opinion is that this claimed misconduct did not affect the result and therefore was not prejudicial. So far as requested, the Court instructed the jury to disregard this improper conduct."

A detailed recitation of the facts of the case would be of little value as precedent. We do not find in the decisions cited by defendants[7] any

---

[7] See, Hoye v. Chicago, M. & St. P. Ry. Co. 46 Minn. 269, 48 N. W. 1117; Wells v. Moses, 87 Minn. 432, 92 N. W. 334; Fisher v. Weinholzer, 91 Minn. 22, 97 N. W. 426; Bremer v. Minneapolis, St. P. & S. S. M. Ry. Co. 96 Minn. 469, 105 N. W. 494; Bahr v. N. P. Ry. Co. 101 Minn. 314, 112 N. W. 267; Bjoraker v. Chicago, M. & St. P. Ry. Co. 103 Minn. 400, 115 N. W. 202; Gutmann v. Klimek, 116 Minn. 110, 133 N. W. 475; Smith v. G. N. Ry. Co. 133 Minn. 192, 158 N. W. 46; Westwell v. Oleson, 174 Minn. 151, 218 N. W. 548; Romann v. Bender, 184 Minn. 586, 239 N. W. 596; Burmeister v. Minneapolis St. Ry. Co. 185 Minn. 167, 240 N. W. 359; Campbell v. Sargent, 186 Minn. 293, 243 N. W. 142; Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39; Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829; Krenik v. Westerman, 201 Minn. 255, 275 N. W. 849; Anderson v. Hawthorn Fuel Co. 201 Minn. 580, 277 N. W. 259; Rian v. Hegnauer, 210 Minn. 607, 299 N. W. 673; Rom v. Calhoun, 227 Minn. 143, 34 N. W. (2d) 359; Magistad v. Potter, 227 Minn. 570, 36 N. W. (2d) 400; Strand v. G. N. Ry. Co. 233 Minn. 93, 46 N. W. (2d) 266; Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655; Maher v. Roisner, 239 Minn. 115, 57 N. W. (2d) 810, 37 A. L. R. (2d) 658; Pelzer v. Lange, 254 Minn. 46, 93 N. W. (2d) 666; State v. Currie, 267 Minn. 294, 126 N. W. (2d) 389; New York Cent. R. Co. v. Johnson, 279 U. S. 310, 40 S. Ct. 300, 73 L. ed. 706; Chicago & N. W. Ry. Co. v. Kelly (8 Cir.) 74 F. (2d) 31; Bulleri v. Chicago Transit Authority, 41 Ill. App. (2d) 95, 190 N. E. (2d) 476.

case which, in our judgment, takes the present situation out of this applicable general rule:

"The matter of granting a new trial for misconduct of counsel or prevailing party is governed by no fixed rules, but rests almost wholly in the discretion of the trial court and its action will not be reversed on appeal, except for a clear abuse of discretion. The trial court is in a much better position than the appellate court to determine whether substantial prejudice resulted from the misconduct." 14 Dunnell, Dig. (3 ed.) § 7099b.

Although we accept the judgment of the trial court that the claimed misconduct did not affect the result and therefore was not prejudicial, we do not want to be understood as condoning the asserted improprieties. What appears from the cold record to be completely unjustified excursion from the relevant facts may have appeared justified at trial time to plaintiff's attorneys because of confusing and seemingly, at least, evasive responses from defendants' witnesses upon being questioned concerning the affairs of numerous corporate entities of which defendant Ross and his wife were the principal stockholders. But, whatever the provocation may have been, the integrity of jury trials must not be jeopardized by questions which embrace testimonial assertions by counsel, intimations of guilt by association, and disparagement of counsel for the adverse party. Trial lawyers have the right and obligation to object to such tactics and to suggest to the court the measures to be taken to offset any prejudicial effect. Trial judges have the clear duty to take whatever action may be necessary to meet the situation and to counteract any attempted appeal to prejudice by clear, specific, and unequivocal admonition. Of necessity, the trial judge, aided by the expressed views of trial counsel, must appraise the effect of misconduct on the fairness of the trial and must decide whether the situation at hand can be corrected without the declaration of a mistrial. Because we feel that the trial judge in this case was aware of this responsibility and took corrective action when and as urged by defendants' attorney, we are affirming the order from which the appeal has been taken.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at

the time of the argument and submission, took no part in the consideration or decision of this case.